𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

PRICE'S ADM'R v. DAVIS.

March 24th, 1892.

SUBROGATION—*Vendor's lien—Case at bar.*—A purchaser executed ten bonds for deferred payments on land purchased of complainant as commissioner. When five were paid a new commissioner replaced him. The new commissioner subsequently reported all the bonds paid, and a deed was made to the purchaser. Complainant filed his bill against purchaser, alleging he had furnished him money to pay the sixth bond, and had obtained judgment for same, and prayed that the vendor's lien reserved on the land when sold be enforced for his benefit.

HELD :

He was entitled to the relief prayed for.

Appeal from two decrees of circuit court of Greene county, rendered June 12th, 1888, and November 13th, 1888, respectively, in the four consolidated chancery causes of *Price* v. *Davis and others*, *Graves, Assignee*, v. *Davis and others*, *Davis* v. *Offield and others*, and *Eddins and others* v. *Offield and others*. The decrees being adverse to Joseph Smith, administrator of Waller J. Price, deceased, and others, they appealed. Opinion states the case.

*A. R. Blakey* and *James Hay*, for appellants.

*James G. Field*, for appellees.

LEWIS, P., delivered the opinion of the court.

This is an appeal from several decrees of the circuit court of Greene county. The facts out of which the controversy arises, are substantially these :

In 1854, the appellee, Davis, as the trustee of Waller J. Price and his children, filed his bill, and obtained a decree, in the court below for a sale of the trust property, which consisted of a tract of mountain land, containing 506 acres, and a small parcel of land, known as the Tan-Yard property, situate in the village of Stanardsville. At the sale the mountain land was purchased by one Offield, who paid in cash $187.75, and executed his ten bonds for the deferred payments, each for $187.35, payable annually with interest. The Tan-Yard property was, at the same time, sold to one Malone, who made the required cash payment, and also executed his ten bonds for the deferred payments each for $123.74, payable annually with interest.

These sales were duly reported to the court by Davis, who had been appointed a commissioner to make them, and they were confirmed at the June term, 1855. The first, second, third, fourth and fifth of the Offield bonds and as many of the Malone bonds were subsequently collected, and the proceeds invested, by Davis under orders of the court. The money was invested in state stock, certificates of which, aggregating $1,611.12, were filed in the papers in the cause.

In November, 1863, Davis, with the leave of the court, resigned as trustee, and A. D. Almond was appointed in his stead. At that time only five of the Offield bonds had been collected, the five not collected passing under the control of the new trustee, the aggregate principal of which together with the unpaid Malone bonds, amounted to $1,555.45. Afterwards—probably at the June term, 1864—Almond was authorized to collect the whole of the unpaid purchase-money, when the same should become due, the last two bonds being payable in February, 1865. At the November term, 1864, however, Almond reported that the whole of the purchase-money had been paid, and the

report was confirmed. The same decree also directed the property to be conveyed to the purchasers, respectively, which was done.

In 1877, several years afterwards, Davis filed his bill in the court below against Offield and others, in which he stated that he had advanced for Offield, at the request of the latter, the money necessary to discharge his sixth bond, which fell due in February, 1861, and that he had afterwards obtained a judgment at law against him for the sum so advanced. And the prayer of the bill was that " the vendor's lien reserved on the mountain land when the sale aforesaid was made, be enforced " for the plaintiff's benefit, notwithstanding the deed of conveyance to Offield.

This suit was ordered to be heard with the suit of *Davis, Trustee* v. *Price and others*, and on the 28th of February, 1888, a decree was entered referring it to a commissioner to inquire and report whether or not Davis had accounted to the trust fund for the proceeds of the said sixth bond. In obedience to this decree the commissioner filed his report, which was in Davis' favor, and the court, overruling an exception to it, confirmed it, and by a subsequent decree granted the prayer of the bill.

The commissioner in his report stated that he had to rely entirely upon the papers in the suit of *Davis, Trustee,* v. *Price and others*, for evidence touching the matter referred to him, and that from the record in that case it appeared that the whole trust fund had been collected and accounted for. Nor can it be denied that the judgment obtained by Davis against Offield is conclusive, as between the parties to it, that the sixth Offield bond was paid with money advanced by Davis, as charged in the bill.

Much was said in the argument in opposition to the decrees complained of, but we see nothing in the record to warrant their reversal, and they are, therefore, affirmed.

DECREE AFFIRMED.