WILKINS, NEELY & JONES *v.* GIBSON, and *vice versa.*

1. One who advances money to pay off an encumbrance upon realty at the instance either of the owner of the property or the holder of the encumbrance, either upon the express understanding, or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, is not a mere volunteer ; and in the event the new security is for any reason not a first lien on the property, the holder of such security, if not chargeable with culpable and inexcusable neglect, will be subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equities of others would be prejudiced thereby; and to this end equity will set aside a cancellation of such security and revive the same for his benefit.
2. Knowledge of the existence of an intervening encumbrance will not alone prevent the person advancing the money under an agreement of the character above referred to from claiming the right of subrogation, when the exercise of such right will not in any substantial way prejudice the rights of the intervening encumbrancer. Delay on the part of the intervening encumbrancer

to prosecute his legal remedies, and indulgences granted by him to the debtor, brought about by the fact that the lien to which subrogation is asked had been cancelled on the records, will, when accompanied by substantial damage to the rights of the intervening encumbrancer, be a sufficient reason for a court of equity to refuse the person advancing the money the right of subrogation and a decree setting aside the cancellation, when the claim of subrogation is not asserted within a reasonable time after knowledge that the prior encumbrance has been cancelled of record.

3. If a junior encumbrancer pays off a senior encumbrance, he will generally, when the payment was necessary for his protection, be subrogated to the rights of the senior encumbrancer.

(*a*) To entitle one creditor to be subrogated to the rights of another, as a general rule the former must have satisfied in full the demand of the latter, so as to relieve him from trouble, expense, and risk.

(*b*) If the creditor to whose rights subrogation is claimed has been satisfied in full, the fact that such satisfaction has been brought about by two persons will not prevent each from setting up the right of subrogation as against the other, to the extent of the payments made by them ; and this is true notwithstanding the payments may have been made at different times.

4. When one advances money to another upon an agreement that the lender is to have a first lien on described property, and to secure the debt thus created the lender takes a security deed, the mere fact that the lender has sought to enforce the collection of his debt by the remedies appropriate in such a case will not alone amount to a waiver of the right to be subrogated to the claim of a prior encumbrancer, when in his efforts to follow the remedies above referred to he discovers that such subrogation is necessary to his protection.

5. When a transaction apparently lawful in all respects is attacked as usurious, it is incumbent upon the person making such attack to affirmatively show that the same is thus tainted ; and the mere fact that the amount received by the debtor is less than the apparent principal of the debt, and that treating the amount thus received as the true principal would render the transaction usurious, will not alone constitute proof of usury.

6. That the lender of money used to pay off a prior encumbrance charged usury would not deprive him of the right to be subrogated to the rights of the prior encumbrancer to the extent of the principal of the loan and lawful interest thereon.

7. The plaintiff's equitable petition set forth a cause of action, and there was no error in overruling the general demurrer to the same.

8. When a loan of money is secured by a conveyance of real estate, and subsequently the property depreciates in value so that the same is worth less than the debt, the lender, if the borrower is insolvent, has an equitable claim to the rents of such property ; and especially is this true when the lender is delayed in the prosecution of his remedies by a claim filed by a third party, and the litigation is protracted. It is permissible in a claim case for the plaintiff in execution to file, in aid of his levy, an equitable amendment to the joinder of issue, setting up his claims to the rents ; and he may in such amendment attack a sale which is in his way, and make necessary parties for this purpose. Such an amendment does not add a new cause of action to the claim case.

9. When a lender of money brings suit against the legal representative of the borrower, praying a special lien on land taken as security for the repayment

of the loan, and the defendant, under a plea of plene administravit præter, sets up and proves that he has collected the rents of the land for given years and appropriated them in a specified way, and the judgment is in favor of the defendant on this plea, the plaintiff is precluded by such judgment from afterwards claiming that the rents referred to in this plea should have been appropriated to his debt.

10. A creditor who is the holder of a junior encumbrance, but who claims to have been subrogated to the rights of the senior encumbrancer as against the rights of an intervening encumbrancer, in setting up the right of subrogation must make the senior encumbrancer a party to the proceeding, or allege a sufficient reason for not doing so; and must also make such allegations and ask for such relief as the senior encumbrancer should make and ask for if he were proceeding in his own right.

11. Other questions made in the record which may probably arise at another hearing are dealt with in the opinion.

Argued January 30,—Decided March 26, 1901.

Levy and claim, etc.  Before Judge Henry.  Burke superior court.  March 19, 1900.

*J. R. Lamar, E. H. Callaway, Callaway & Fullbright*, and *S. H. Sibley*, for Wilkins et al.

*R. O. Lovett, Ellis & Ellis*, and *Lawson & Scales*, contra.

COBB, J.  On October 30, 1893, Mrs. Wilhelmina I. Steiner executed and delivered to John P. Gibson a security deed, under the provisions of section 1969 et sequitur of the Code of 1882, to a certain described tract of land, to secure a debt of $6,000 due the grantee, who gave to the grantor a bond conditioned to reconvey the property upon payment of the debt.  This deed was duly recorded on November 28, 1893.  The debt referred to in the deed was for a loan of money for which a written application-had been made by Mrs. Steiner to Lawson & Scales, it being stated therein that the debt was to bear interest at eight per cent., payable annually, the principal debt being payable in ten annual installments.  The applicant also stated that the loan requested was to be used to pay off a mortgage held by A. L. Richardson, and, in effect, that there were no other encumbrances on the property which she proposed to give as security for the loan.  An abstract of the title prepared by Lawson & Scales, attorneys at law, shows that there were no other liens than the mortgage held by Richardson outstanding against the property.  In a certificate attached to the abstract these attorneys state that the land would be subject only to the security deed given to Gibson.  The debt became due

on account of the same not .having been paid in accordance with the contract, and Gibson filed his petition against R. C. Neely, administrator of the estate of Wilhelmina I. Steiner, who had died since the execution of the deed, to recover judgment on the notes which the deed was given to secure. Having recovered such a judgment, which was declared to be a special lien on the land, execution was issued thereon on May 28, 1896, and the same having been levied on the land described in the security deed, a claim was interposed to the property by Wilkins, Neely & Jones. Pending the trial of the claim case, on September 14, 1897, Gibson, the plaintiff in execution, filed an equitable petition against Wilkins, Neely & Jones, the claimants, R. C. Neely, as administrator of the estate of W. I. Steiner, deceased, and Charles A. Scudder, the substantial averments of which are as follows:

On February 23, 1889, Wilhelmina I. Steiner executed and delivered certain promissory notes, dated that date and due five years thereafter, aggregating $9,068.90, to A. L. Richardson of New Orleans, Louisiana, and, for the purpose of securing the payment of these notes at maturity, executed and delivered to Richardson a security deed under the provisions of section 1969 of the Code of 1882, conveying a certain described tract of land. On November 19, 1890, W. I. Steiner executed to Wilkins, Neely & Jones a mortgage deed covering the property described in the deed to Richardson, to secure an alleged indebtedness of $5,000, a clause in the mortgage reciting that it is made to secure any general or special balance due or that may at any time become due, as cumulative or additional security, and does not affect any other security already given. On February 11, 1891, W. I. Steiner executed and delivered to Wilkins, Neely & Jones, a mortgage for the sum of $6,000, covering the same debt and property as the foregoing instrument; this mortgage also reciting that it was given to secure any general or special balance due or that might become due to the mortgagees. As a matter of fact, this mortgage represented the same debt, and was taken in lieu of and in extinguishment of the instrument dated November 19, 1890. The paper dated February 11, 1891, appears of record to have been marked cancelled and satisfied on November 10, 1891. On November 6, 1891, W. I. Steiner executed and delivered to Wilkins, Neely & Jones a mortgage for the sum of $6,000, covering a large amount of personal property; this mort-

gage also reciting that it was given to secure any general or special balance due or which might become due. This mortgage was by Wilkins, Neely & Jones marked cancelled and satisfied on June 18, 1892. On June 17, 1892, a similar mortgage was given this firm, to secure $6,580.41, which sum included all the indebtedness of W. I. Steiner; the mortgage containing a similar recital to the foregoing. It was cancelled of record February 10, 1893. Subsequently, the notes given by W. I. Steiner to A. L. Richardson having become due, she applied to Lawson & Scales, loan brokers, and engaged said firm to negotiate a new loan in order that she might pay up and discharge her indebtedness to Richardson, who was urging a settlement of the same. Upon being informed that no new loan could be secured if there were any existing or uncancelled liens against the property offered as security, W. I. Steiner, knowing that subsequently to the deed to Richardson such liens had been given Wilkins, Neely & Jones, immediately applied to them to assist her in perfecting the necessary arrangement to secure the new loan. To this they readily consented, and, being anxious that Mrs. Steiner should make arrangements with Richardson so that she could continue her farming operations, out of which they hoped to realize their debt, accompanied W. I. Steiner's husband, who was acting for her, to the office of Lawson & Scales, and in the presence of the members of this firm stated that they thought all their liens on the property had been cancelled, but if they were not, they would promise and agree to cancel and extinguish all their liens on the property in question, if Lawson & Scales would negotiate the loan for Mrs. Steiner. Upon the faith of this agreement, and upon the assurance of Wilkins, Neely & Jones that they held no liens or other papers against the property, application was made for a loan of $6,000, the same being sufficient to pay the debt due Richardson, which amount was advanced by petitioner to W. I. Steiner and by her paid to Richardson in extinguishment of his debt, and his deed was then and there marked cancelled and satisfied upon the record; the debt due petitioner being secured by a security deed under section 1969 et seq. of the Code of 1882, which deed was dated October 30, 1893, and recorded November 30, 1893. After the consummation of the loan and the execution of the deed, Wilkins, Neely & Jones, having full knowledge of the deed, in pursuance of their previous intention and understanding, in order to secure an

alleged indebtedness to them, caused W. I. Steiner to execute and deliver to them, on May 1, 1894, a mortgage to secure the payment of $9,806.90, covering the same property as that described in the deed to petitioner.

The petition further alleged, that at the December term, 1896, of Burke superior court, upon a suit on the notes secured by deed a judgment was rendered in favor of petitioner against R. C. Neely, administrator of W. I. Steiner, deceased; upon which judgment execution was issued, and, after a reconveyance by petitioner, the same was levied upon the property conveyed to petitioner, against which he obtained a special judgment; to which levy a claim was interposed by Wilkins, Neely & Jones, and the same is now pending. Petitioner, upon investigating the basis of said claim, finds to his surprise that the record discloses no actual cancellation of the paper dated November 19, 1890, from W. I. Steiner to Wilkins, Neely & Jones, but which he asserts has in equity and good conscience been cancelled so far as his rights and the priority of his existing judgment is concerned. W. I. Steiner having died, Wilkins, Neely & Jones, claiming to be large creditors, applied for letters of administration on her estate, through one of the members of their firm, R. C. Neely, who was duly appointed and qualified on November 5, 1894. On June 3, 1895, R. C. Neely, as administrator aforesaid, obtained from the court of ordinary leave to sell the equity of redemption in the land now levied upon, subject to an alleged indebtedness to the firm of which he was a member of $5,000 and the debt due petitioner of $6,000. On July 2, 1895, the equity of redemption was exposed to sale and knocked off to Charles A. Scudder, a son-in-law of Wilkins and brother-in-law of both Neely and Jones, at and for the nominal and inadequate consideration of $5.00. While the property was bid off in the name of Scudder, petitioner charges that it was in pursuance of an arrangement made by him and Wilkins, Neely & Jones, in order that they might obtain possession of the premises and reap the benefits of the rents, issues, and profits of said place, without accounting for the income, thus enabling them, should their mortgage deed be sustained, to compel petitioner to pay the amount of the alleged indebtedness of W. I. Steiner to them as it stood at the date of sale of the equity of redemption, without giving credit for the actual amounts received by them, which in law and equity

should be credited on their claim if it had priority of law.　Scudder was a nominal party to the transaction, Wilkins, Neely & Jones being the real purchasers at the sale, and they have since exercised all rights of ownership.　Petitioner alleges that at the time of the pretended sale of the equity of redemption there was no salable title in the estate of W. I. Steiner, and that the purchaser could acquire no title or interest in the property or its income that would militate against the rights of petitioner in the enforcement and collection of his debt.　The administrator has made no returns for the years 1896 and 1897, and has made no accounting as to what he has done with the proceeds of the sale of the perishable property or of the annual income of said property since his administration down to the present time; and even if the deed under which Wilkins, Neely & Jones claim is prior in law to the claim of petitioner, he alleges that, upon a proper accounting between the administrator and the claimants, all the indebtedness of W. I. Steiner to Wilkins, Neely & Jones would have been fully paid off and discharged.　By accepting the administration on the estate of the deceased the administrator took possession of the tract of land levied on, and also of all other property belonging to the deceased, and held the same in trust for the benefit of creditors and heirs; and having accepted this trust, he and the firm of which he is a member are in law and equity estopped from setting up any title in himself or them adverse or antagonistic to the title of his intestate.

The prayers of the petition were:　(1) That the pending claim be enjoined and stayed until the matters set up herein are adjudicated and determined.　(2) That the lien of his judgment under his said notes and deed aforesaid be decreed to be superior in rank and dignity to all the liens or titles set up by claimants, and that the property levied on be declared subject to his fi. fa.　(3) That Wilkins, Neely & Jones be required to specifically perform their agreement as to cancellation of their liens, and that the mortgage dated November 19, 1890, be delivered up and cancelled.　(4) That the pretended sale of the equity of redemption in the property levied on be declared null and void.　(5) That claimants be decreed to be estopped from setting up any title adverse to the title of W. I. Steiner, deceased.　(6) That R. C. Neely, as administrator, be required to account fully and specifically for all assets that have come into his hands, and particularly of the sale of personal property, and

the rents, issues, and profits of the property from the date of his administration down to the present time; that R. C. Neely, as administrator, and Wilkins, Neely & Jones be required to account and show the true indebtedness of W. I. Steiner to Wilkins, Neely & Jones, and what payments or credits, if any, have been made by the administrator on the debt, and what amounts have been received by Wilkins, Neely & Jones, collectively or individually, from the rents, issues, and profits of the property, both before and after the pretended sale of the equity of redemption.    (7) That the court decree that the cancellation of the mortgage dated February 11, 1891, be a cancellation and satisfaction of the prior one, dated November 19, 1890. (8) For general relief, and process.    When the claim case was called for trial, plaintiff in execution moved to amend the pleadings so as to enlarge the issues, and set up the following matters as ancillary to his right to condemn the land in controversy:    The estate of W. I. Steiner is insolvent, and plaintiff and claimants are her only creditors.    The fi. fa. levied is proceeding to enforce a judgment founded on a debt secured by deed to the land levied on, which deed was made by W. I. Steiner in 1893.    At the time this deed was made W. I. Steiner was indebted to A. L. Richardson in the sum of $5,598, and Richardson held title to the land levied on as security for the sum due him by Mrs. Steiner.    Of the sum of $6,000 loaned by petitioner to Mrs. Steiner in 1893, $5,598 was paid by petitioner to Richardson on the notes he held against Mrs. Steiner.    This payment was made at the request of Mrs. Steiner, and her purpose in procuring the loan was to pay the notes held by Richardson.    On account of the facts aforesaid, the plaintiff in fi. fa. is subrogated to all rights and priorities that Richardson had at that time, and is in equity and right the legal assignee of the security held by Richardson for the amount paid to Richardson and the interest thereon. Claimants knew of the application of Mrs. Steiner for a loan and the purpose for which it was to be used, and urged her to procure the loan, as it would be of advantage to the claimants as junior creditors of Mrs. Steiner.    Plaintiff alleges that Wilkins, Neely & Jones did not furnish any credit to Mrs. Steiner by reason of the fact that the Richardson deed was cancelled of record.    Their status as creditors was not changed by reason of the cancellation.    The debt for which they claim to hold the deed as security was contracted prior to the cancellation of the Richardson deed, for which reason they

have in law and equity no right to the land as against petitioner's judgment. Plaintiff prays, therefore, that the land be declared subject to his fi. fa. for the amount he paid to Richardson, in the event it is not declared subject to the fi. fa. as it now stands, which plaintiff claims as his legal right. Claimants objected to the allowance of this amendment, and moved the court to require the plaintiff to elect whether he would proceed under the levy, or would have the case tried under the equitable petition. The court refused this motion and allowed the amendment; and to this ruling the claimants filed exceptions pendente lite, contending that the plaintiff was not entitled, under the facts alleged in the amendment, to the relief prayed for, that the amendment constituted a new cause of action, and that plaintiff was not entitled, under the facts alleged, to be subrogated to the rights of Richardson.

The claim case and the equitable proceeding having been, by direction of the court, consolidated and ordered to be tried together, Wilkins, Neely & Jones insisted on a demurrer previously filed to the equitable petition, which contained the following grounds: (1) There is no equity in the petition. (2) The petition sets forth no cause of action. (3) There is a misjoinder of parties defendant. (4) There is a misjoinder of causes of action. (5) The petition is not verified, notwithstanding it prays for injunction. (6) The petition is not sanctioned, although it prays for injunction. The court sustained the demurrer as to the third and fourth grounds, and struck all the allegations as to the sale of the equity of redemption to Charles A. Scudder. To the failure of the court to sustain the other grounds of the demurrer the defendants assign error in their pendente-lite exceptions above referred to. Subject to their demurrer, Wilkins, Neely & Jones filed an answer which, in substance, alleged: W. I. Steiner transferred to them the bond for titles given her by Richardson, and under this bond and the instrument executed November 19, 1890, they hold the titles to the land levied on, and they deny that this instrument has ever been cancelled or extinguished. They deny all of the allegations of the petition with reference to an agreement on their part to cancel their liens if plaintiff would advance the money to pay the Richardson debt, and deny that they stated that they thought all their liens had been cancelled. They had no knowledge of the negotiations for the loan, or of the conveyance by Mrs. Steiner to plaintiff, until

after the death of Mrs. Steiner.   They deny that the equity of re-
demption was sold for an inadequate consideration, and aver that
it was utterly valueless.   They aver that the sale was at public
outcry, and was fairly conducted.   It is alleged that in the suit on
the notes instituted by plaintiff against R. C. Neely as administrator
of W. I. Steiner, Neely submitted his accounts, including the amount
received by him from the sale of the equity of redemption, in his
plea of plene administravit præter ; that this plea was found in fa-
vor of Neely; and for this reason the matters set up in the petition
in relation to the purchase of the equity of redemption and the con-
duct and management of the sale are res adjudicata, and petitioner
is estopped from attacking the same.   And defendants claim that
their rights under the instrument dated November 19, 1890, and
under the transferred bond for titles, are superior to the rights of
the plaintiff under his deed and the judgment rendered on the
notes secured by the deed.   They pray for a decree establishing
these rights.   By an amendment to their answer, these .defendants
set up that they advanced various sums to Mrs. Steiner to be applied
upon the debt due Richardson, both before and after the date of
their security executed on November 19, 1890, and they pray that
they may be subrogated to the rights of Richardson to the extent
of the sums so advanced.   Charles A. Scudder answered the peti-
tion, denying generally all the material allegations of the same.
In addition to these answers, there appears in the record an answer
of R. C. Neely, as administrator, to the original suit on the notes
held by the plaintiff, in which answer Neely sets up that he had
fully administered all of the assets of the estate of Mrs. W. I. Steiner
which came into his hands, except certain property of small value;
and he attaches to his answer a copy of his account with the estate,
showing receipts and expenditures.

The trial resulted in a verdict for the plaintiff against the land
for $5,598.00, with interest at 7% from October 30, 1893.   The
defendants filed a motion for a new trial, and, pending the hearing of
this motion, the plaintiff sued out a bill of exceptions to this court,
complaining that the trial court erred in sustaining certain grounds of
the defendants' demurrer to the petition, and in striking a portion
of the petition.   These exceptions came before this court at the
October term, 1899 (110 *Ga.* 93), and the points raised were not
decided, but leave was granted to withdraw the bill of exceptions

and file it in the court below as exceptions pendente lite, with the right in the plaintiff to avail himself of his exceptions after the motion for a new trial was heard and determined. Three questions were submitted to the jury by the court: (1) Whether the security deed held by Wilkins, Neely & Jones had been cancelled and satisfied of record by a novation in taking mortgages on the same property. (2) If the mortgages to Wilkins, Neely & Jones, subsequent to the deed relied on by them, did not constitute a novation, whether they had agreed that, if the money was advanced by Gibson for the purpose of paying off the Richardson debt, they would waive their claim as against Gibson's debt. (3) Whether Gibson was subrogated to the rights of Richardson, on the theory that he had paid the money with the understanding that he was to have a first lien on the property. The jury found in favor of the defendants on the question of novation, and that they had not agreed to waive their rights as against Gibson; but found in favor of Gibson on his claim of subrogation. The defendants' motion for a new trial assigns error upon the admission of certain evidence, upon various specified portions of the charge, and upon the failure of the court to give in charge various requests. The motion was overruled, and they excepted, assigning as error the overruling of the motion and the rulings complained of in their exceptions pendente lite. The plaintiff in a cross-bill of exceptions has brought to this court the assignments of error in the main bill brought to the October term, 1899, wherein he complains of the action of the court in sustaining certain grounds of the defendants' demurrer to the equitable petition, and the striking of certain portions thereof, and of the refusal to allow the amendment offered in the claim case in its entirety. The cross-bill brings under review the ruling of the court, in sustaining those grounds of the demurrer, that there was a misjoinder of parties defendant and of causes of action. The effect of the action of the court was to eliminate from the case all claims and charges in relation to the sale of the equity of redemption, and also all claims and demands for an accounting by the defendants for the rents, issues, and profits received from the land after the alleged pretended sale of the equity of redemption. The record is voluminous, and the facts of the case complicated. We shall, however, endeavor to deal with all of the material questions arising in the case. As the jury found in favor of the defendants on the issues

as to novation and estoppel, it will be unnecessary to advert to those branches of the case.    On these the evidence was directly conflicting, and we shall assume, for the purposes of this opinion, that the jury have arrived at the truth of the case with respect to them.

1. The doctrine of subrogation has for a long time been applied by courts of equity.    It was borrowed from the civil law, and was of two kinds: the legal subrogation, which took place as a matter of equity without any agreement to that effect made with the person paying the debt; and the "conventional subrogation," which was applied where an agreement was made with the person paying the debt that he would be subrogated to the rights and remedies of the original creditor.    See Howe's Studies in Civil Law, 155. Courts of equity in this country have applied the doctrine in favor of sureties who pay off the debts of their principals (24 Am. & Eng. Enc. L. (1st ed.) 194; Sheldon, Sub. (2d ed.) § 86; Harris, Sub. § 162); as well as in favor of any person having an interest in property upon which there is a lien, and who, to protect that interest, pays off such lien.    24 Am. & Eng. Enc. L. (1st ed.) 248; Sheldon, Sub. (2d ed.) § 3; Harris, Sub. § 795.    The extent to which the doctrine of subrogation has been expressly recognized by the lawmaking power in this State may be seen by reference to the following sections of the Civil Code: 2986, 2995, 2996, 5433, 5471.    The doctrine has also, from the very first, been applied in favor of a person who, though having no interest in the property necessary to be protected, yet pays off the lien upon an agreement that he is to be subrogated to the rights of the lienholder.    24 Am. & Eng. Enc. L. (1st ed.) 290, and cases cited; Sheldon, Sub. (2d ed.) § 248.    According to these authorities, this agreement may be made with the person paying the debt by either the creditor or the debtor.    See also, in this connection, Allen *v.* Caylor (Ala.), 24 So. 512.    The doctrine has been recently applied by this court in such a case.    *Merchants Bank* v. *Tillman,* 106 *Ga.* 55. It is, however, never applied for the benefit of a mere volunteer. "The doctrine of subrogation is not applied for the mere stranger or volunteer, who has paid the debt of another, without any assignment or agreement for subrogation, being under no legal obligation to make the payment, and not being compelled to do so for the preservation of any rights or property of his own."    Sheldon, Sub. § 240.

In a case where a stranger pays off the debt of another which is secured by deed or mortgage, the parties have a right to agree that the payer will have the same priority as the holder of the security, and be substituted for him. A court of equity will enforce this agreement as made, and give the second creditor just such security as he contracts for. If he is content to take an inferior lien and rely on that to enforce payment of his debt, the court will not, in the absence of an agreement for subrogation, come to his relief and subrogate him to the rights of the holder of the original security. Consequently, if the second creditor pays the debt without taking an assignment of the security, and without any agreement, either actual or implied, that the security is to be kept alive for his benefit, and takes a new security, it will be subject to any valid intervening liens which may have been created by the debtor on the property, notwithstanding the former might have paid the debt by request of the debtor and without any knowledge of the existence of the intervening liens. If in such a case the lender desires to be subrogated to the rights of the original creditor, he must make a distinct agreement to that effect. The law will not imply an agreement from the bare fact that the money was paid by request of the debtor. When the first security is paid off its lien is discharged, and the equitable doctrine of subrogation can not be invoked to revive it in favor of a person who had no interest in paying the debt, and who did so without any agreement that he would be substituted for the original creditor. By operation of law, as soon as this lien is discharged, the lien next in dignity takes its place, and for equity to give another creditor priority over such a lienholder, when perhaps the debtor's purpose in discharging the first lien was to give him the preference, would be manifestly unjust. In any case the burden is on the person paying off the lien to show an agreement, or a state of facts from which an agreement would be implied, to substitute him for the original creditor. And to properly carry this burden he must show an agreement clear and unequivocal, or a state of facts from which such a one will be implied. Such we understand to be the rules recognized and applied by at least a majority of the courts of this country. In Sheldon on Subrogation, § 248, we find the following: "It has been said that whenever a payment is made by a stranger to a creditor in the expectation of being substituted to the place of the creditor, he is entitled to such substitu-

tion.  But the doctrine generally adopted, and that of these very cases when limited to the point actually decided, is that a conventional subrogation can result only from a direct agreement, express or implied, made with either the creditor or the debtor, and that it is not sufficient that a person paying the debt of another should have merely the understanding on his part that he is to be subrogated to the rights of the creditor, though if the agreement has been made a formal assignment will not be necessary."  The law is thus stated in the 24 Am. & Eng. Enc. L. (1st ed.) 290–291:  "In order that one having no interest to protect, who pays the debt of another or advances money for the purpose, may he entitled to succeed to the rights and remedies of the creditor in respect of the debt so paid, there must be a convention or agreement to that effect."  "Conventional subrogation, as its name imports, results from the agreement of the parties, and can take effect only by agreement."  Bouvier's Law Dict., title "subrogation."  "Under the civil law it was said that the right would not pass to a stranger; that it was a personal privilege.  In order to pass the right to him, it would be necessary to do so by stipulation for such agreement."  Harris' Law of Sub. § 792.  Indeed, this rule of the civil law required an absolute and express agreement for subrogation; and in Louisiana it is applied with so much strictness that the lender will not be entitled thereto unless he made an express agreement to that effect with the creditor, notwithstanding the debtor may have agreed to substitute the lender for the creditor.  See Sheldon, Sub. § 250.

But it must not be understood that an agreement for subrogation will never be implied.  In fact, there are loose expressions in some of the cases to the effect that if the advance is made at the request of one who has an interest in the lien to be discharged, an agreement for subrogation will be implied.  See 24 Am. & Eng. Enc. L. 295–296.  But in many of the cases where these expressions occur the facts showed an actual agreement, and those few which can be properly treated as deciding the question are out of harmony with the weight of authority.  As an instance of the former class, see Sutton *v.* Sutton, 26 S. C. 33;  Home Savings Bank *v.* Bierstadt, 168 Ill. 618, s. c. 61 Am. St. Rep. 146.  In Railroad Co. *v.* Wortendyke, 27 N. J. Eq. 658, certain persons, who had advanced money to pay off a debt contracted by the railroad company for rolling-stock and locomotives, claimed to be subrogated to the rights of the

vendors, to the extent of the advancements made. In dealing with this contention, Mr. Justice Green said: "The case as here presented does not entitle the petitioners to a decree for subrogation. They do not, in their petition, claim to stand as guarantors on the contract, or that they were in any way held bound for its performance. They only allege that they made the advances with the understanding that they should be subrogated to the right of the owners of the rolling-stock, to the extent of such advancements. I have been unable to find, either in the petition or evidence, anything to show an agreement with the original debtor or creditor, that these parties should be entitled to subrogation or to stand in the place of the vendors of the stock. It is not sufficient that a person paying the debt of another should do so merely with the understanding on his part that he should be subrogated to the rights of the creditor. Conventional subrogation can only result from an express agreement either with the debtor or creditor." Citing Dixon, Sub. 1, 10, 167; Bouvier's Law Dict., title Subrogation; Sandford v. McLean, 3 Paige, 116; Shinn v. Budd, 1 McCarter, 234. In Watson v. Wilcox, 39 Wis. 643, it was held: "One who, having no interest to protect, voluntarily loans money to a mortgagor for the purpose of satisfying and cancelling the mortgage, taking a new mortgage for his own security, can not have the former mortgage revived and himself subrogated to the rights of the mortgagee therein." In Home Savings Bank v. Bierstadt, supra, notwithstanding it was ruled, as stated above, that one who advanced money at the request of the debtor was not to be regarded as a volunteer, it appeared that there was an express agreement that the lender was to have a first lien on the property; and it was said in the opinion that "It is the agreement that the security shall be kept alive for the benefit of the person making the payment which gives the right of subrogation, because it takes away the character of a mere volunteer. Here the agreement between the debtor and the appellee, who advanced the money, was to the effect that appellee was to advance sufficient money to discharge the seven Goudy deeds of trust, and should receive from the debtor, by way of security for the money so advanced, a first mortgage upon the seven lots. In equity, that was an agreement that the Goudy deeds of trust should become security for her loan. That was the substance of the transaction, and equity will effectuate the real intention of the parties, where no injury is done to an innocent party,

by applying the principle of conventional subrogation." Probably, therefore, the language in another portion of the opinion with reference to money advanced by request is to be treated as qualified by the first part of the foregoing quotation. It was further ruled in that case, that even where the security paid off was cancelled, equity would keep it alive for the benefit of the person paying the debt, provided he was not guilty of gross negligence, and where justice requires it. The Supreme Court of Texas has held that while an agreement for subrogation was necessary, it was sufficiently shown by a recital in a deed to the lender that he retained a first lien on the property. Mustain *v.* Stokes, 38 S. W. 758.

A case which, perhaps, leans too far the other way is that of Bohn Sash Co. *v.* Case, 60 N. W. 576. There it appeared that the lender, by express request and solicitation of the debtor, advanced him the money with which to pay off certain mortgages on his property, upon the assurance by the debtor that the lender was to have a first mortgage thereon. There were other liens outstanding at the time, junior to the mortgages, but the lender was assured that these liens had been provided for. As a matter of fact they had not; and the Supreme Court of Nebraska held that the lender was not subrogated to the rights of the mortgagees in the discharged mortgages. In Kocher *v.* Kocher (N. J.), 39 Atl. 536, it was held that, "Where a son loaned his father money with which to pay assessments which were a lien on a lot, he was not entitled to be subrogated to such lien." In the opinion the vice-chancellor said : "The right of subrogation must either arise out of the circumstance that the party paying or asking subrogation was interested in the property, and entitled to pay the incumbrance in order to protect himself, or he must have made the payment at the request of either the debtor or the lienor, with the understanding that he should be subrogated." In Whiteselle *v.* Loan Agency (Tex.), 27 S. W. 300, it was held, in effect, that subrogation arose in favor of a lender who advanced money to pay off a security under an agreement with the debtor that he was to have a first lien on the property pledged to secure the original debt. In Seeley *v.* Bacon (N. J.), 34 Atl. 139, Vice-Chancellor Reed, in referring to the claim of a person who had advanced money to pay off certain liens to be subrogated to the rights of the lienholders, said : "She claims that she should be subrogated to the rights of these mort-

gagees to the amount which she had advanced for their payment. But the mere fact that she advanced $3,500 with the intention that it should be used in the payment of these mortgages, coupled with the fact that this sum was so used, will not entitle her to subrogation. The right to subrogation which springs out of the mere fact of the payment of a debt, and which is termed 'legal subrogation,' exists only in favor of a surety for the payment of the debt, or one who is compelled to pay the debt to protect his own rights. Phœbe Munford stood in no such attitude when she paid this money. She must, therefore, rely upon an agreement, existing at the time of the payment, with the mortgagor or mortgagee, that she should be subrogated to their liens. This is styled ' conventional subrogation.' It is entirely settled that one who advances money to pay a claim for the security of which there exists a lien, in default of an agreement, can not be subrogated to the rights of the lienor. . . Conventional subrogation can only result from an agreement either with the debtor or creditor." In Heiney v. Lontz (Ind.), 46 N. E. 667, it was ruled, substantially, that one who advances money for the payment of an incumbrance, upon the promise merely of repayment, without any interest of his own to protect, and without promise of subrogation, and without fraud or imposition upon him, is not entitled to subrogation. See, also, Small v. Stagg, 95 Ill. 39 ; Straman v. Rechtine (Ohio), 51 N. E. 44; Wilson v. Wilson (Idaho), 57 Pac. 708, 712; Allen v. Caylor (Ala.), 24 So. 512; Henry v. Bounds (Tex.), 46 S. W. 120, 122. We have undertaken to refer to only a few of the many cases dealing with this question. Those cited above are among the more recent decisions. Many of the earlier cases cited in the notes to 24 Am. & Eng. Enc. L. 281, et seq., will be found to be in point, some of them more nearly so even than some of those above cited.

It is true, as stated above, that some of the courts have extended the doctrine farther than those above referred to. It has been said that subrogation was a "benevolent" doctrine and equity would apply it in any case in which justice required it ; and under sanction of this elastic expression cases can be found where it was applied without the semblance of an agreement. We think the safer and better rule to be, and we therefore hold, that subrogation will arise only in those cases where the party claiming it advanced the money to pay a debt which, in the event of default by the debtor, he would

be bound to pay, or where he had some interest to protect, or where he advanced the money under an agreement, express or implied, made either with the debtor or creditor, that he would be subrogated to the rights and remedies of the creditor. See Ætna Insurance Co. *v.* Middleport, 124 U. S. 534.

For instances of a more liberal application of the doctrine, see the following cases: Price *v.* Davis, 88 Va. 939; Emmert *v.* Thompson, 49 Minn. 386; Zell's Appeal, 111 Pa. St. 532; Gans *v.* Thieme, 93 N. Y. 225; George *v.* Butler (Utah), 50 Pac. 1032; Greishaber *v.* Farmer (Ky.), 42 S. W. 742. In *Merchants Bank* v. *Tillman*, 106 *Ga.* 55, cited above, the law with reference to the doctrine of conventional subrogation was thoroughly considered, and the conclusion was reached that " One who advances money to pay off an encumbrance upon realty, at the instance of the owner thereof, and upon the express understanding that the advance made is to be secured by the immediate execution of papers which will constitute a first lien on the property, is not a mere volunteer; and in the event the new security thus taken turns out to be defective, the person parting with his money on the faith thereof, if not chargeable with culpable and inexcusable neglect in the premises, will be subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equities of others would be prejudiced thereby." It appeared in that case that the debtor made an express agreement with the person who advanced the money to pay off the encumbrance that he should have a first lien on the property. See also *Mitchell* v. *Butt,* 45 *Ga.* 162 ; *Franklin* v. *Newsom,* 53 *Ga.* 580. An agreement of the character just referred to was held, in effect, to be an agreement that the second creditor was to be subrogated to the rights of the creditor whose debt had been discharged with the money advanced. Viewed in the light of the authorities, as well as in that of sound equitable principles, that decision is manifestly right. But further than that we are not prepared to go. Some of the extracts from the judge's charge were not in harmony with the rules above laid down, and consequently a reversal of the judgment refusing a new trial is necessary. As the case goes back for another hearing, it would not be profitable, if indeed it would be proper, to express any opinion on the evidence found in the present record, as facts may be adduced on another trial which will give the case an entirely different

aspect.  Nor is it necessary to set out at length the portions of the charge which contain erroneous statements of the law.  They will sufficiently appear from an application to the charge of the principles above laid down.  The judge instructed the jury, in effect, that if the plaintiff advanced the money to pay off the debt due Richardson, by request of Mrs. Steiner, and the money was used for that purpose, this, without more, would make a case for the application of the doctrine of conventional subrogation.  In order to recover on this theory, the plaintiff must show a state of facts from which either an express agreement or one arising by necessary implication will appear to have been made between him and Mrs. Steiner, or Richardson, or their respective agents under authority from their principals, that the plaintiff was, so far as the dignity of his lien was concerned, to stand in the place of Richardson.  It also results from the above that the amendment offered by the plaintiff claiming subrogation was subject to the demurrer filed thereto, for the reason that it is nowhere alleged therein that the plaintiff had an agreement of any character with Mrs. Steiner or Richardson, whereby he was to be substituted to the latter's rights.

2.  The defendants, however, contend that even if the evidence justified a finding that an agreement was made between Mrs. Steiner and Gibson that he was to be subrogated to the rights of Richardson, it would be inequitable and unjust to apply the doctrine in favor of Gibson, because he was guilty of inexcusable negligence; and the court was requested to charge that Gibson would not be entitled to subrogation if he was guilty of "inexcusable negligence " in failing to know or to act on his knowledge of the deed to Wilkins, Neely & Jones.  It is undoubtedly true that if, on account of the gross negligence of the lender, the rights of intervening lien holders are prejudiced, and they are placed in a worse position than they would have been had the debt not been paid, the lender will not be entitled to subrogation.  When the defendants, the holders of the intervening liens, took their mortgages, the lien of Richardson was in existence and superior to theirs, and of this fact they had knowledge.  To substitute Gibson for Richardson would apparently place them in no worse position than they were before.  Wilkins, Neely & Jones claim, however, as will hereafter appear, that they will be substantially and seriously injured if Gibson is permitted to assert the lien of Richardson against them.  The fact that Gibson

may have known of the existence of the mortgages of defendants, which were executed before the cancellation of the deed to Richardson, will not defeat his right to subrogation, provided, of course, he had an agreement for subrogation. If he had such an agreement, he simply stands in equity in the place of Richardson, so far as the dignity of his debt is concerned. On account of this agreement equity simply assigns this security to him. See, in this connection, Home Savings Bank *v*. Bierstadt, 168 Ill. 618, s. c. 61 Am. St. Rep. 146, 149; Levy *v*. Martin, 48 Wis. 206–207; Hammond *v*. Barker, 61 N. H. 53 ; Campbell *v*. Trotter, 100 Ill. 281; Tryrell *v*. Ward, 102 Ill. 29. In Bruse *v*. Nelson, 35 Iowa, 157, it was held that subrogation would arise provided the lender had no actual notice of the intervening lien, though it was of record. In Union Mortgage Co. *v*. Peters, 72 Miss. 1059, it was held that a second mortgagee, being placed in no worse position by the transaction, can not complain of the subrogation of the lender to the rights of the first mortgagee. See, also, Draper *v*. Ashley, 104 Mich. 527. The point urged by the defendants against Gibson in this connection is, in its essence, that of equitable estoppel to claim subrogation, because the original lien was cancelled through the negligence of Gibson in failing to take an assignment when the defendants' liens were outstanding. "Equitable estoppel is the effect of the voluntary conduct of a party, whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct to change his position for the worse, and who, on his part, acquires some corresponding right, either of property, of contract, or remedy." 2 Pom. Eq. Jur. § 804. See, also, Whiteselle *v*. Tex. Loan Agency, 27 S. W. 309, 315, where estoppel was invoked and denied by the court in a case similar to the one now in hand. While Wilkins, Neely & Jones do not claim to have advanced any money relying upon the fact that the Richardson deed had been cancelled, nor that they have expressly released any security on this account, still they say that, treating the Richardson deed as having been cancelled, they did not press their claim against Mrs. Steiner with the same vigor that they would have done if they had known their claim was to be treated as inferior to Gibson's, and that they would not have granted Mrs. Steiner the indulgences which they did grant

if they had not felt confident of having a first lien on the property; and that these facts would work an estoppel against Gibson to assert the right of subrogation.　When a prior incumbrance has been cancelled of record, and, acting on the faith of this, an intervening incumbrancer has delayed in prosecuting his legal remedies or has granted indulgences the result of which is to make the exercise of the right operate to his serious disadvantage, while there may be no estoppel by reason of these facts against the right of a person advancing money to pay off the prior incumbrance to claim subrogation, still if he delays for an unreasonable length of time to claim the right and have the cancellation set aside, this will be a sufficient reason for a court of equity to refuse the right of subrogation.

3. It appears from the record that Gibson, the plaintiff, did not advance the entire amount necessary to satisfy the debt due Richardson, but that the defendants, Wilkins, Neely & Jones, paid a portion of the same.　A portion of the aggregate amount paid by them was advanced after the date of their security deed of November 19, 1890, and a portion before, which they claim was paid at the instance and request of Mrs. Steiner.　They claim, therefore, to be subrogated to the rights of Richardson to the extent of the sum so advanced.　It is well settled that if a senior mortgage be paid off by a junior mortgagee, he will, if the payment was necessary for his protection, be subrogated to the rights of the senior incumbrancer.　In such a case, however, it must appear that the discharged mortgage was due and was about to be enforced against the property, and that its enforcement would prejudice the claims of the junior lienholders.　Sheldon, Sub. (2d ed.) §§ 12, 18 ; Harris, Sub. §§ 8, 94; 24 Am. & Eng. Enc. L. (1st ed.) 269 et seq.　In order, however, to entitle the junior mortgagee to subrogation, the general rule is that the whole debt must be paid and the senior creditor satisfied.　Equity will not generally permit a junior incumbrancer to interfere with a senior lien so long as the lien creditor remains unsatisfied.　In *Carter* v. *Neal*, 24 *Ga.* 346, it was held : " To entitle one creditor to be subrogated to the rights of another creditor, the former must have satisfied the latter his demand so as to relieve him from trouble, expense and risk."　See, also, 24 Am. & Eng. Enc. L. (1st ed.) 200, 255 (2), 273 ; Harris, Sub. §§ 28, 29; Sheldon, Sub. § 70.　It seems, however, that if the debt be actually discharged, the junior incumbrancer would be

entitled to subrogation to the extent of the amount he contributed, though the balance of the debt was paid by the debtor or by a third person. In Comins *v.* Culver, 35 N. J. Eq. 94, it appeared that a judgment was recovered against Hetfield & Culver. From this judgment an appeal was taken, and one Pottle became surety on the appeal bond. The judgment was affirmed. On it a portion of the debt was realized, and Pottle paid the balance. It was held that he was subrogated pro tanto to the right of the judgment creditor. See, also, Vert *v.* Voss, 74 Ind. 566. In Magee *v.* Leggett, 48 Miss. 139, 146, it was said: "We do not understand the rule as requiring that the 'surety' must make entire payment; it is enough if the creditor has been fully paid, part by the principal debtor, and part by the surety. In such a case, subrogation will accrue *pro tanto* to the extent of his payment." We see no good reason why the same rule would not be applicable in the case of a junior mortgagee who, together with the debtor, pays off a prior lien on the property. It results from this that if Wilkins, Neely & Jones contributed a portion of the amount which went to discharge the debt due Richardson, and this amount was advanced for the purpose of protecting their security and rendering it more effectual, they would, after Richardson had been paid in full, be subrogated equally with Gibson, if it develops that he is in fact entitled to subrogation, to the extent of the amount so advanced; and in case the full amount of both claims is not realized upon an enforcement of the Richardson security, the defendants would be entitled to prorate the sum actually realized with the claim of Gibson. As to the sums advanced prior to the date of their security, they of course would have no claim for subrogation on the theory that they paid for their protection; but if they are entitled to subrogation at all as to these sums, it must be governed by the principles of conventional subrogation, above laid down.

4. But the defendants further insist that Gibson has waived his right to subrogation, by seeking to enforce his rights under the security deed held by him; that this is conclusive evidence that he has elected to rely on his security deed rather than on his right to subrogation. We do not think this contention is maintainable. Gibson thought he was getting a first lien on the property. On no other theory would he have the semblance of a right to subrogation. If his security had been, in fact, prior in dignity, it would

have been unnecessary to claim the benefit of an equitable assignment of the Richardson security. It developed that Gibson's security was defective, but this was not definitely ascertained until he made an effort to enforce it. As soon as the defendants, by interposing a claim, thwarted this effort, he claimed the benefit of subrogation. We do not think he necessarily waived his equitable right by endeavoring to enforce his legal one. See Sheldon, Sub. § 42. Where a party has two remedies for enforcing a claim, the prosecution of one does not necessarily constitute a waiver of the other; and where one proves ineffectual, he may, as a general rule, resort to the other. It is true that delaying an unreasonable length of time to claim subrogation will sometimes amount to a waiver of the right. Sheldon, Sub. §§ 40, 110; 24 Am. & Eng. Enc. L. (1st ed.) 320 et seq. But this we think is not applicable in a case like the present. Gibson had taken security, which was in itself not a waiver of his right to subrogation. As he had taken it, he had a right to endeavor to enforce it. This being so, simply delaying an assertion of his right to subrogation until his debt matured, or for a reasonable time thereafter, would not of itself amount to a waiver of the right.

5. The contention is further made by Wilkins, Neely & Jones that the security deed from Mrs. Steiner to Richardson and the one from her to Gibson were both infected with usury, and therefore void. Of course, if the deed to Richardson was infected with usury, it was void, and he was simply an unsecured creditor to the extent of the amount which he could lawfully collect. But we are unable to perceive that the contract was usurious, and the burden is on the defendants to make this appear. The deed is not usurious on its face, and it has not been shown that the transaction was a cover for the exaction of usury. There was testimony that the amount loaned Mrs. Steiner was $6,000; whereas the amount of the debt secured by the deed was $9,068. But this excess can be accounted for on the score of interest and lawful charges, such as commissions, etc. But be this as it may, it is incumbent on the defendants to show that the excess represented actually more than lawful charges, or that some trick or device was resorted to to evade the usury laws. If the excess was commissions charged by the persons who negotiated the loan, this would not make the contract usurious, unless these persons were the agents of the lender, who knew

that they were receiving compensation for their services out of the funds of the borrower, and that the amount of this compensation was incorporated in the deed to be collected along with the principal debt.    See *McLean* v. *Camak,* 97 *Ga.* 804; *Clarke* v. *Havard,* 111 *Ga.* 242; *Finney* v. *Equitable Mortgage Co.,* Ibid. 108.

6. It was also contended that the security deed taken by Gibson was infected with usury and void, and that therefore he was not entitled to be subrogated to the rights of Richardson.    Even if it be conceded that this deed was void for usury, this fact would not deprive him of the right to enforce the Richardson security for his benefit.    On the question of subrogation, Gibson is to be dealt with as if he had taken no security at all; and while, of course, he could not, by enforcing the Richardson lien, collect any higher rate of interest than the law allows, he could nevertheless enforce this deed for the amount of money he advanced, together with lawful interest.    Suppose Gibson had simply advanced money to Mrs. Steiner to pay Richardson on her promise to keep the latter's lien alive for Gibson's benefit, would the circumstance that Gibson charged or retained more than lawful interest defeat his right to enforce the agreement? Certainly not, to the extent of the amount lawfully due.    To hold otherwise would make the penalty imposed on him for charging usury a forfeiture of the entire debt.    Besides, we think the point has been, in principle, decided in *McWilliams* v. *Bones,* 84 *Ga.* 203, 210, where it was held: "That the lender of the money used to pay off the prior mortgage liens charged usury did not deprive him of the equitable rights resulting from the application of his money to the discharge of the mortgages, the discharge of which was requisite for the debtor to have a homestead at all which would be free from incumbrances." See also *Bugg* v. *Russell,* 75 *Ga.* 837.    It is claimed, however, that the doctrine of subrogation was not involved in these cases, the effect of these rulings simply being that the debt to which the homestead was sought to be subjected was for the purchase-money, and the homestead was therefore liable to the payment of the same no matter in whose hands the debt might be.    We think that the doctrine was directly involved, for the reason that while the original creditor was a purchase-money creditor, and therefore his debt was superior to the homestead right, still, under the facts of these cases, the person seeking to enforce the right of this purchase-

money creditor would not be allowed to assert the same under any other principle than one which would place him in the shoes of the original creditor; and this is exactly what subrogation is.　It is true that in those cases the effect of applying the doctrine of subrogation was simply to defeat a right set up by the debtor, and that the rights of an intervening creditor were not involved as they are in the present case; but the principle in each case is the same, and that is, that equity will allow one creditor under certain conditions to succeed to the rights and remedies of another, notwithstanding the creditor seeking such substitution may have attempted to collect usury from his debtor.　Of course, a person seeking to enforce the payment of usury does not come into court with clean hands, and courts of law as well as courts of equity are closed against him; but when one having attempted to effect a usurious agreement repents of the wrong that he has done against the law and purges his debt of usury and seeks to collect only that to which he is in good conscience entitled, that is, principal and legal interest, we know of no principle of law or equity which would close the doors of the courts against him and refuse to accord to him the rights which any honest creditor was entitled to receive either at law or in equity.　As stated above, any other rule than this applied in our courts would have the effect of causing the creditor to forfeit his entire debt as a penalty for attempting to exact usury, when the law of this State says that the utmost penalty which shall be imposed shall be a forfeiture of the usury charged and the loss of any security which depends upon a paper conveying title to property. If Gibson in the present case is attempting to enforce in the superior court as a court of equity a claim infected with usury, he will be entitled to no relief.　On the other hand, if his debt is not infected with usury, or if at any time so infected and the same has been purged and he is seeking to enforce simply the amount of the true principal and legal interest, the superior court as a court of equity is open to him for the enforcement of any right to which he might be entitled, either at law or in equity, as a creditor of the estate of Mrs. Steiner.　We conclude, therefore, that, though it should be made to appear that Gibson's deed was void for usury, he would still be entitled to be subrogated to the rights of Richardson, if he had an agreement to that effect, provided he is not seeking to collect more than the principal and legal interest of his debt.

7. As it may develop on another trial that Gibson is not entitled to subrogation, and as he may be confined to the remedy afforded by his security deed to enforce his debt, we shall deal with the demurrers to the equitable petition, both those grounds which were sustained, as well as those which were overruled.    There was equity in the petition.    The claimants based their claim mainly on the instrument executed in their favor by Mrs. Steiner on November 19, 1890.    The petition attacks this deed and seeks to have it cancelled.    It alleges one state of facts which, if true, would estop the defendants from setting up the deed as against the plaintiff; and another state of facts which show that all rights under this deed had been lost by a novation.    If these facts were established, Gibson's security deed was superior to the claim of the defendants. Under well established practice, such a petition was allowable in aid of the plaintiff's execution.    As to the grounds of the demurrer raising the points that the petition was not verified or sanctioned, they appear not to have been insisted on in this court, and we treat them as having been abandoned.

8. The assignments of error in the cross-bill of exceptions, on the action of the court in sustaining certain grounds of the demurrer and striking a part of the petition, bring up for consideration the questions raised by the plaintiff's allegations with reference to the sale of the equity of redemption, and whether he has a right to have an accounting between Neely, as administrator, and Wilkins, Neely & Jones, as to rents, issues, and profits.    In dealing with these questions, it is to be remembered that under the plaintiff's allegations he had the senior lien on the property, Wilkins, Neely & Jones' deed of 1890 being, according to such allegations, void.    Clearly, therefore, if the sale to Scudder was void, these defendants never acquired any title to the equity of redemption owned by Mrs. Steiner at the time of her death, and the same is still a part of her estate.    If Gibson was the holder of the senior lien, as he claimed to be by subrogation to the rights of Richardson, and the property taken as security for the debt had, by depreciation in value since the debt was contracted, become worth less than the debt, he would, on account of the insolvency of the estate of Mrs. Steiner, have an equitable claim upon the rents and profits of the property.    While such a creditor has no legal title to the rents and profits, he has an equitable claim upon the same so far as they are needed to dis-

charge the debt due him.   *Dawson* v. *Mortgage Co.*, 109 *Ga.* 389, 394, and case cited.   This being true, Gibson would be entitled to set up, in an equitable amendment in the claim case or in an independent equitable petition, his claim to these rents, and this claim would not constitute a new cause of action in the claim case, being merely an ancillary proceeding allowable under our loose and peculiar system.   See, in this connection, *Ford* v. *Holloway*, 112 *Ga.* 851.   Neither did joining in the equitable petition the claim for rents and the prayer that Neely, the administrator, and his firm, to whom it was alleged he had paid the rents, might be made to account for the same, constitute a misjoinder of causes of action; nor did the making parties of Scudder and Neely, administrator, constitute a misjoinder.   In order to set aside the sale of the equity of redemption both Scudder and Neely, as administrator, were not only proper but necessary parties.   In any view of the case Gibson had a right to have an accounting as to the rents between the administrator and the firm of which he was a member.   If Wilkins, Neely & Jones were in possession under a valid sale of the equity of redemption, they stood simply in the shoes of Mrs. Steiner, and Gibson would have a right as against them, under his allegations, to so much of the rents as was necessary to make up the amount sufficient to discharge his debt.   If they were in possession under their security deed of 1890, this possession was simply for the purpose of collecting out of the rents, issues, and profits an amount sufficient to pay off the debt due them, and they would be liable to account to the estate of Mrs. Steiner for the benefit of Gibson for whatever amount they had realized from this source over and above the sum necessary to pay their debt.   See *Gunter* v. *Smith*, ante, 18.   Gibson would, however, as against them, have no right either to have the rents impounded or a receiver appointed, for the reason that there is no allegation that they are not amply able to respond to him for any amount for which they may ultimately be held liable.   As the estate is alleged to be insolvent, and as it is also alleged that the administrator was misapplying the income, it is clear that Gibson had a right to have an accounting with the administrator, and to have the amounts which he has or ought to have received as rents applied by the court to the payment of his debt, there being a distinct allegation that Gibson and defendants are the only creditors of the estate.   See, in this connection, *Polhill* v.

*Brown,* 84 *Ga.* 338 (9); *Jones* v. *McLeod,* 61 *Ga.* 607 (3).   More especially is this true, when it is alleged that a sufficient amount has been collected from this source to pay off the debt due Wilkins, Neely & Jones, and that they are still collecting the rents under a pretended right claimed to have been acquired under a void sale of the equity of redemption.

9.  When one is sued as executor or administrator, it is his duty to so plead as to protect himself from individual liability.   If he does not so plead, the judgment will be conclusive on the question of assets in his hands with which to pay the claim on which he was sued.   When he does so plead, the judgment is conclusive on both parties as to all questions which were raised in the pleadings or which could properly have been raised therein.   Gibson and Neely, as administrator of Mrs. Steiner, are both bound by the judgment rendered in the case in which Gibson brought suit on his notes.   Neither can go behind that judgment for any purpose.   Consequently, Neely can not be held liable personally or as administrator on account of any payments made by him prior to the judgment which were set up in his plea and on which the court found in his favor.   If, however, he improperly, fraudulently, or collusively paid any amount to his firm which they were not entitled to receive, and Gibson did not, at the time of the judgment, know of the fraud or collusion and could not have discovered it by the exercise of ordinary diligence, then, under appropriate pleadings, the judgment might be set aside.

10.  That part of the equitable amendment filed in the claim case, praying that Gibson might be subrogated to the rights of Richardson, should have been stricken for a reason additional to the one referred to above.   The right to make equitable amendments of this character is limited to such amendments as set forth some reason in equity why the property levied on is subject to the execution as against the claimant.   See *Ford* v. *Holloway,* supra.   If the deed executed by Mrs. Steiner in 1890 to Wilkins, Neely & Jones was a valid deed, the only equity which Gibson could set up to show that his execution should sell the land was one either tendering them their debt or showing some good reason why he could not do so, or showing some reason why his judgment was superior to their deed.   The amendment as filed shows on its face that the property is not subject to the Gibson execution, but avers facts

which show that in equity Gibson has another demand which is superior to the claimants' deed. Gibson had no right to a verdict and judgment finding the property subject to his execution for any amount, and the verdict rendered was contrary to the evidence. He had the right to fall back on the Richardson note and deed and use this security for his benefit. But he should have made Richardson a party and prayed for a judgment on the Richardson debt in his favor to the extent of the amount advanced by him, provided, of course, that in no event could he receive by subrogation or otherwise, as against the claimants, more than the amount of the Richardson debt which he had paid. See, in this connection, *Holcombe* v. *Railroad*, 78 *Ga.* 776; *Chappell* v. *Boyd*, 61 *Ga.* 663 (7); Bond v. Montgomery, 56 Ark. 563, s. c. 35 Am. St. R. 120, 125. If Gibson desires to take anything under his new security, he must rest content with the dignity which the law gives it, and allow the claimants priority. If, on the other hand, he desires to place himself in Richardson's shoes, he must make Richardson a party to the case, or allege a sufficient reason for not doing so, and set up Richardson's rights and allow others to make the defenses which they would be permitted to make if Richardson were suing in his own right. This is subrogation, as we understand it.

11. The foregoing deals with all of the assignments of error that require to be treated at any length. We will now briefly refer to some of the others which raise questions that are likely to arise at another trial. Complaint is made that the court erred in admitting in evidence Mrs. Steiner's application to Lawson & Scales for the loan; and also the certificate of these attorneys to the abstract of title, on the ground that the statements made therein were not binding on Wilkins, Neely & Jones. As neither the application nor the certificate is set out, either literally or in substance, in the motion for a new trial, we can not deal authoritatively with these assignments of error. But we merely suggest that as the plaintiff claimed conventional subrogation, and as that depends upon a contract between himself and either Mrs. Steiner or Richardson, any evidence tending to show that such a contract was made would be admissible.

It is further argued that the jury found too large an amount as interest in favor of the plaintiff. As the case goes back for another trial, we deem it unnecessary to notice this point further than to say that the plaintiff would be entitled to recover interest

from the date he parted with his money.   Prima facie, this was done on the date the notes were executed; and if this is not true, it would be incumbent on the defendants to show this.   The circumstance that the debt due Richardson may not have been paid and his deed cancelled would not postpone the time that interest would begin to run.   The plaintiff would be entitled to interest from the time he actually paid over the money.

One ground of the motion for a new trial complained that an answer to an interrogatory had been improperly admitted, because the interrogatory was a leading question.   As to what is a leading question in an interrogatory, and the liberality to be allowed in such a case, see *Franks* v. *Gress Lumber Company*, 111 *Ga.* 87.   There was no error in refusing to require the plaintiff to elect whether he would prosecute the claim case or the equitable proceeding, in the light of the fact the causes were afterwards properly consolidated by direction of the court.   See *White* v. *B. & L. Ass'n*, 106 *Ga.* 146 (1).

It was argued that at the date of the security deed of 1890, executed by Mrs. Steiner to Wilkins, Neely & Jones, she had nothing to convey, being the holder only of a bond for titles, with the legal title in Richardson.   She was the owner of an equity of redemption, and as against all the world except Richardson she was the owner of the property.   As against every one except him she could set up that she was the owner of the property and entitled to all the rights as such, and her vendees could do the same.   Let the case be tried again in the light of the views above expressed.

*Judgment on each bill of exceptions reversed.   All concurring.*