FISHER <em>et al. v.</em> GRAHAM.

Under the allegations in the pleadings and the facts disclosed at the hearing, the court did not abuse its discretion in granting an injunction and appointing a receiver.

Argued June 24,—Decided July 19, 1901.

Injunction and receiver. Before Judge Roberts. Wilcox superior court. May 16, 1901.

Alfred K. Fisher conveyed certain lots of land owned by him to Sherwood, as security for a loan of $5,000, and received from Sherwood a bond to reconvey on payment of the debt; and Sherwood conveyed the land to the American Freehold Land Mortgage Company Limited, subject to Fisher's rights under his bond. Fisher assigned to Graham the bond to reconvey, and executed to him a deed to the land, in consideration of $7,500; Graham paid the Mortgage Company the amount due it, and received from it a conveyance of the land to himself; and Fisher made a contract with him for the purchase of the property and gave him notes for the purchase-money. In a suit on these notes, a verdict and judgment against Fisher, which set up a special lien on the land, were taken by Graham in accordance with a written agreement between the parties, in which agreement it was stipulated that the judgment should be enforced only in a manner stated in the agreement. Under this agreement the debt was to be paid in four instalments, due respectively on specified dates in the years 1896, 1897, 1898, and 1899; on failure to pay the first instalment when due, the plaintiff was to have at once the right to levy on and sell certain lots (the numbers of which were given); in case of failure to pay the second instalment when due, the same right was to exist as to cer-

tain other lots; and similar provisions were made as to the third and fourth instalments. The first instalment was not paid at maturity, and Graham filed and had recorded a deed from himself to Fisher to the lots designated by the contract as subject to levy and sale on failure to pay that instalment, and caused an execution based on the above-mentioned judgment to be levied on them; but a sale was prevented by payment of that instalment. The instalment due in 1897 was not paid, and Graham filed and had recorded a deed to Fisher to lots designated by the contract as subject to levy and sale on failure to pay the instalment then due, and caused his execution to be levied on those lots. To this levy a claim was interposed by Mrs. Fisher, the wife of the defendant; the claim was accepted by the sheriff and returned to the superior court, and the sale was postponed. The instalment due in 1899 was not paid when due, and Graham pursued as to this instalment the same course as that pursued in regard to the instalments due in 1896 and 1897, except that the lots reconveyed for the purpose of levy and sale, and levied on, in this instance were selected without reference to the stipulation above mentioned, which designated certain lots as subject to levy and sale in connection with particular instalments. To this levy the defendant interposed an affidavit of illegality, on the ground that the levy was in conflict with the contract under which the judgment was taken. The affidavit of illegality was returned to the superior court, and the sale was postponed.

In April, 1901, Graham presented to the judge of the superior court his petition setting out the facts above stated, with copies of the contracts referred to, and charging waste on the part of Fisher and of others to whom Fisher had sold timber growing on the land in question, and the privilege of cutting and boxing trees for turpentine purposes; also that the claim interposed by Mrs. Fisher was frivolous and fraudulent, and was filed for the purpose of delay; and that the affidavit of illegality filed by Fisher was filed for the same purpose. He alleged that the affidavit of illegality had been dismissed by the court for insufficiency, and that the affiant's attorney had given notice that he intended to file a bill of exceptions to that judgment, the effect of which would be to postpone for a long time the enforcement of the plaintiff's judgment and seriously injure him; that Fisher was using the income from the

property and profiting from acts of waste, which were in progress; that the amount due on the judgment was about $13,000, and was increasing; that Fisher and his wife were insolvent; that the land in question was insufficient as security for the debt, and if sold at sheriff's sale would not sell for enough to pay off the execution; and that it was necessary for the plaintiff's protection to impound the rents and income arising from the land. He prayed for the appointment of a receiver to take charge of the land and to collect and hold the rents; that a commissioner be appointed to sell the property, and especially that embraced in the levy to which the affidavit of illegality had been imposed, and under such terms as would fully protect the rights of all parties concerned; and for an injunction against the cutting and boxing of the timber, and any other acts of waste on the land, and against the making of any conveyance of the land. Fisher, his wife, and Collins and Galloway were made defendants to the petition; the latter two being persons to whom it was alleged that Fisher had conveyed turpentine privileges.

Fisher and his wife were the only defendants who opposed the granting of the petition. He demurred as follows: (1) The petition sets forth no cause of action. (2) The contract which was the basis of the plaintiff's original suit stipulated for him to have a certain security, which he has, and the effect of the present suit is simply to ask the court to give him greater security than that contracted for. (3) The present suit is an effort to enforce the judgment in a manner different from that provided for in the contract on which the judgment was based and which provided how it should be enforced. (4) It appears from the petition and the exhibits attached to it that the land is worth double the amount of the plaintiff's demand, and the allegation of insolvency is therefore irrelevant; and the plaintiff has an adequate remedy at law. Mrs. Fisher demurred as follows: (1) The petition sets forth no cause of action as against her. (2) It shows that she has given the bond required by law in cases of claims filed to land levied on; and the plaintiff, therefore, has an adequate remedy on the bond by an action at law. (3) She is entitled by statute to a trial at law on the merits of the claim filed by her, and the plaintiff can not forestall or preclude such a trial by reason of any alleged equity he may have as against any other person.

Fisher in his answer admitted that he had leased to Galloway timber on a part of the land for turpentine purposes, but denied that it was a considerable part of the land. He denied the allegation of insolvency, and alleged that the land was worth more than thrice the amount of the plaintiff's demand. He denied the allegations as to a purpose to defraud and delay the plaintiff. He contended that as there was a supersedeas in the case of the affidavit of illegality, by reason of the filing of a bill of exceptions in that case, and an affidavit as provided by the Civil Code, § 5552, par. 3, no further proceeding could be had to enforce the levy of the execution, and the plaintiff could not maintain the petition, it being merely an equitable proceeding in aid of the levy. The court, after hearing evidence, granted an injunction against any interference with the land on the part of the defendants, and appointed a receiver for the purpose stated in the petition. Defendants A. K. and Mary Fisher excepted. The evidence was directed mainly to the question of insolvency and that of the value of the land.

*Eldridge Cutts* and *Hal Lawson*, for plaintiffs in error.
*William C. Worrill*, contra.

COBB, J. The petition set forth a cause of action, and no sufficient reason was stated in the demurrer either of Fisher or his wife why the injunction should not have been granted. It was distinctly provided in the agreement which was a part of the verdict and judgment rendered against Fisher that "if, after the last instalment becomes due as aforesaid, there shall be any balance due on said indebtedness, plaintiffs may levy and sell whatever remains unsold of said lands, or any other property of said defendant." The last instalment fell due in 1899, and was not paid. The present petition was filed in 1901, at which time, under the very terms of the agreement, Graham had a right to proceed to sell for the purpose of paying the debt due him all of the property described in his security deed, in any manner authorized by law, provided the sale of the whole of it was necessary for the purpose of paying his debt. Under the allegations in the petition it is necessary to sell all of the lands still unsold, and it certainly does not lie in the mouth of Fisher to say that Graham shall not proceed to collect his debt in the manner authorized by law, when, under the averments in the petition, he and his wife have interposed every obstacle within their

power to the collection of his debt when he was seeking to collect the same in the manner in which it was provided in the agreement that it should be collected before the maturity of the last instalment. There was equity in the petition, and the court did not err in so holding. In the demurrer of Mrs. Fisher it was set up that as she had interposed a claim to a portion of the land levied on and had given the bond required by the statute in claim cases, conditioned to pay to the plaintiff such damages as the jury might assess in the event they should reach the conclusion that the claim was filed for delay only, she was entitled to a trial of her claim case, and the remedy of the plaintiff, if she was not the owner of the land and the claim was interposed for delay only, was to ask for damages when the claim case should be tried. It was said in the argument that a receiver to collect the rents of the property in such a case was not necessary, and that this court had never held that a receiver would be appointed for the purpose of collecting the rents, except in a case where the claimant had not given the bond and had interposed her claim in forma pauperis. We do not think that in a case in which a claim is interposed to property levied on, where the plaintiff in execution is in equity entitled to the rents of the property, the remedy upon the claim bond to ask that the jury assess damages for the delay is at all adequate for the plaintiff in execution. It is legally possible for the jury to find that the claim is unfounded, and at the same time to reach the conclusion that the claim was interposed in perfect good faith. In such a case, if the litigation is protracted and the claimant is insolvent, the plaintiff has no remedy whatever for the loss resulting to him from the rents being collected by a person who is not able to respond. We think that the right of the plaintiff in execution to a receiver in such cases is dependent, not upon the ability of the claimant to give the claim bond to answer for damages in the event the claim was filed for delay only, but upon the ability of the claimant to respond in an action for the rents, issues, and profits collected by him which in equity belonged to the plaintiff in execution. This, we think, was the view entertained by this court in the case of *Wilkins* v. *Gibson*, 113 *Ga.* 31, where the claim was interposed by persons who were perfectly solvent; and while it was held that the plaintiff in execution was entitled to an accounting, it was ruled that a receiver would not be appointed, because the claimants were solvent, thus

clearly intimating that if the claimant were insolvent the court would be authorized to appoint a receiver to collect the rents pending the litigation.

It is contended that the court erred in granting an injunction. and appointing a receiver, because the equitable petition of the plaintiff was one merely in aid of his levy, that to this levy an affidavit of illegality had been filed, which was overruled at the trial, and that a bill of exceptions was pending in this court, assigning error upon the judgment overruling the illegality, and that so long as the case was undisposed of the plaintiff in execution had no right to proceed with any other remedy. We do not think this position is well taken. The fact that an affidavit of illegality has been overruled and a bill of exceptions filed carrying the case to the Supreme Court, where there will necessarily be delay in determining the question, instead of being a reason why equity would not interfere in behalf of the plaintiff, is itself a good reason for its interference by the granting of an injunction and appointing a receiver, in view of the allegations made in the petition. It is also claimed that the plaintiff in execution is estopped from claiming that the value of the land is less than the amount of the debt, by the stipulation in the agreement that the defendant in execution should have a right to sell portions of the land at private sale at four dollars per acre, the price so fixed being, as contended, the true value of the land, and both parties being bound by the stipulation that the land is worth that much. Even if the parties were bound by this stipulation at the time the agreement was entered into, and could not say that the land was worth less than the amount so fixed, they were not bound by that stipulation certainly after the last instalment became due and remained unpaid. At that time, as has heretofore been shown, the plaintiff in execution was entitled to pursue any remedy to collect his debt which the law provided. While the evidence on the question of the insolvency of Fisher was directly conflicting, we think that there was evidence from which the judge could find that he was insolvent within the meaning of the rule laid down in *Cohen* v. *Parish*, 100 *Ga.* 338, which was, in substance, that, if the value of the person's property is not sufficient to discharge all of his debts, such person is insolvent. It is true that some of the witnesses for the plaintiff based their opinion on the value of the property upon what it would

bring at judicial sale, and it is contended by counsel for plaintiff in error that this is not a correct test to be applied. It seems to us, however, that where the person who is to be affected by the question as to whether another is solvent or insolvent is compelled to resort to a judicial sale in order to realize on his debt, the value of the property as tested by a judicial sale is a very important matter to be inquired into in determining whether his debtor is solvent or insolvent. While what the property would bring at judicial sale is not absolutely controlling on the question of what is the market value of the property, still it is a circumstance to be considered in determining the question as what is the market value, and in a case like the present is a very important one to be considered. Under this view of the case there was abundant evidence from which the judge could find that the market value of the property was less than the debt for which it stood as security. After a careful examination of the record and the briefs filed, we are satisfied not only that the judge did not abuse his discretion in granting an injunction and appointing a receiver, but that this was a proper judgment to be rendered in the case.

*Judgment affirmed. All the Justices concurring.*