## BUGG *vs.* RUSSELL.

B. purchased land from C., paying part of the money in cash and taking a bond for title; he transferred this to a firm as collateral security for a debt which he owed them for merchandise; the balance of the purchase money was paid, but, by direction of the vendee, the title was made to the firm to secure their claim; in order to obtain title in himself, B. borrowed money from R., paid the debt of the firm, who made title to him, and he then made a title to R. to secure the payment of the money loaned. The rate of interest paid by B. to R. was more than the legal rate:

*Held,* that while the conveyance by B. to R. was void as title, or as an equitable mortgage to pay an ordinary debt, yet the money so borrowed and used having enabled B. to obtain the title, was purchase money, and the debt therefor was superior to the homestead right of B. To allow him to take a homestead against the claim of R., would be a fraud.

(*a.*) This case differs in its facts from those in 63 *Ga.,* 32, and 66 *Id.,* 584.

January 5, 1886.

Debtor and Creditor. Homestead. Purchase Money. Interest and Usury. Before Judge RONEY. Richmond Superior Court. October Adjourned Term, 1884.

Russell brought ejectment against Bugg, based on a deed from the latter to the former. The defendant pleaded that the deed was made to secure a debt infected with usury and was void. Russell brought suit on the note made by Bugg to him. The defendant pleaded usury. The plaintiff recovered judgment for the principal, with legal interest and attorneys' fees; a *fi. fa.* was issued and levied on the land in dispute. Bugg made application for a homestead in the property, alleging himself to be the head of a family, consisting of himself, his widowed mother and minor brother. To this Russell objected, on the ground that the applicant was not the head of a family. The objection was overruled, and the objector appealed the case to the superior court. He then filed his bill, alleging these facts, and also that the money advanced by him was used by Bugg to obtain title to the property, and

that it was an equitable mortgage, and his lien was superior to the homestead right. The equity case and the application for a homestead were consolidated, and were submitted to the judge without a jury. The facts are sufficiently set out in the decision.

The presiding judge held that Bugg was the head of a family and entitled to a homestead, but that such homestead was subject to the payment of the debt to Russell. Bugg moved for a new trial, which was refused, and he excepted.

HARPER & BRO.; FRANK H. MILLER, for plaintiff in error.

FOSTER & LAMAR; TUTT & LOCKHART, for defendant.

JACKSON, Chief Justice.

The facts of this case are, briefly, as follows, on the point which must control it:

1. On the 27th of April, 1880, Bugg purchased of one Cohen the real estate at issue for $400.00,—$100.00 cash and $300.00 credit, due October 1st, 1881. Cohen gave him bond for titles when the land was paid for. Bugg transferred this bond to Burum & Co. as collateral security for a bill for merchandise. On October 7th, 1881, the balance of purchase money was paid by Bugg, but he directed the title to be made by Cohen to Burum & Co. to secure a debt to them for merchandise. Thus title to this property was in Burum & Co. In order to get title out of them into himself, Bugg borrowed twelve hundred dollars from Russell, and applied $1,125 of this borrowed money to the payment of the debt Bugg owed to Burum & Co., who then made a deed to this property to Bugg, who made it to Russell to secure him for the money thus paid to Burum & Co. The rate of interest paid for this money to Russell was twelve per cent., and this deed from Bugg to Russell was void as title, or as an equitable mortgage, to pay an or-

dinary debt.  But as the money which put the title of the property into Bugg out of Burum & Co. is purchase money, by the use of which alone Bugg could have got title to it, and without which he could have had no homestead right to it, the sum of $1,125, which got him title from Burum & Co., is the only purchase money he ever paid them for the land, and the title had never been in him till they made the conveyance to him.  The title was originally in Cohen, then it passed into Burum & Co., then into him, bought with $1,125 of the money of Russell.  While the title was in Burum & Co., how could he have had a homestead out of the property?  It did not belong to him, and he could not carve it out of their property.  He paid them. He set up no usury against them.  He owed them a legal debt, himself being the judge, for he paid it without suit; therefore, he could not, against their title, by pretext of usury or otherwise, set up any homestead rights for mother, younger brother and himself.  He had to pay Burum & Co. to have a title to a homestead.  Shall he not pay the man, whose money got him the homestead right out of the property, before he asserts and sets apart that right paid for by Russell?  Justice, equity, law, common sense, all demand that he shall; and Russell was not far wrong when he said that he would not pay him two dollars and a half for his homestead.  The sense of right in the heart of an honest man, when a swindler would cheat him, nine times out of ten, is the law of the land.

Not a cent of usury went into the money which paid for this land; this $1,125 is free from it; it bought for Bugg' and Bugg must pay it.

Inasmuch, as such must be the result of this case in a hundred trials, it is needless to consider allegations of error on minor points.  It is well, however, to add that the case is distinguishable from *Anderson vs. Tribble,* 63 *Ga.,* 32, and 66 *Ga.,* 584.  There the title was in Tribble, and never had been in another, out of whom Anderson's money, and his money alone, put it in Tribble.  If there be *obiter* in

that case, or loose expressions which are at all at issue with the ruling now made, we cannot see their equity. While homestead rights are constitutional and favorites of our law, fraud is not, and to permit Bugg to perpetrate such a fraud as to make a homestead out of the money which he begged Russell to lend, without paying a dollar of it back to him, would be to sink law and equity into a slough of iniquity and putridity, nauseating to every sense of moral purity. The court was right to make him pay the debt.

Judgment affirmed.