McWilliams *v.* Bones, trustee.

84   203
f113   54

1. Under the present constitution, a homestead may not be sold for money borrowed and expended in improvements upon it, and *a fortiori* it may not be sold for money borrowed and expended in improvements before it was set apart.

2. Where money was borrowed and used to pay off a balance due for the purchase price of land secured by mortgage, and another mortgage on the same land containing a waiver of homestead, the lender of the money stood in the place of those two mortgagees and was entitled to be paid in preference to a homestead for the debtor.

(a) The general rule that purchase money notes transferred without indorsement or guaranty, lose their character as such, and that the holder becomes no more than an ordinary creditor, does not apply in this case, as between that holder and the debtor himself, especially as they were secured by mortgage creating a lien for the purchase money, which lien was discharged by the money borrowed.

3. That the lender of the money used to pay off the prior mortgage liens charged usury, did not deprive him of the equitable rights resulting from the application of his money to the discharge of the mortgages, the discharge of which was requisite for the debtor to have a homestead at all which would be free from incumbrances.

January 10, 1890.

Homestead.   Constitutional law.   Waiver.   Subrogation.   Indorsement.   Debtor and creditor.   Equity. Interest and usury.   Before Judge Maddox.   Floyd superior court.   March adjourned term, 1889.

Reported in the decision.

Dean & Smith, for plaintiff in error

C. N. Featherston and W. W. Brookes, *contra.*

Simmons, Justice.

It appears from the record in this case that on November 30th, 1887, the ordinary of Floyd county set apart to Bones, trustee and head of a family, an exemption in certain town property known as the

Oostanaula Mills, directing that if it should thereafter be sold under any order, judgment or decree of any court, the officer selling it should pay over to the ordinary so much of the proceeds as should make $1,600.00, to be invested in property which should constitute the exemption of the said Bones, trustee. Said mill property was afterwards sold by the sheriff under a mortgage *fi. fa.* The sheriff was ordered by the ordinary to pay over to him said $1,600.00 out of the proceeds of the sale. He refused to comply with this order; whereupon the ordinary, for the use of Bones, trustee, brought a rule against the sheriff seeking to compel him to pay over said money. The sheriff, in answer to said rule, stated that he had sold said property under a mortgage *fi. fa.* against Bones, trustee, and in favor of O. H. McWilliams, for $3,200.00 ; that he had not complied with the order of the ordinary to pay over the money to him because McWilliams had placed in his hands a mortgage in his favor against the said Bones, trustee, claiming the whole of the proceeds of said sale upon the ground that his mortgage was for a debt superior to the exemption. McWilliams was made a party to the rule, and set up the following : The money belonged to him because, on April 24, 1885, Bones, as trustee for his three daughters, made to him a mortgage for $4,000.00 ; this mortgage was a lien upon the property, and was superior in dignity to other liens and to the exemption, because the consideration thereof was money loaned and expended in the improvement of said property, and for the removal of incumbrances thereon ; he loaned the money secured by his mortgage upon the faith and belief, and after the express statement made by the agent of Bones, trustee, that said sum would be used in whole to remove incumbrances from said property, and to put improvements thereon permanent in their character; the money so loaned, as

against said exemption, is in the nature of purchase money of the same, and for materials furnished therefor.

The case was submitted to the trial judge without the intervention of a jury. It was admitted that an exemption had been set apart for Bones, trustee; and it was further admitted that the property had been sold by the sheriff. The mortgage by Bones, trustee under the will of his wife, was introduced in evidence. It recited that Bones, trustee, had that day borrowed from McWilliams $4,000.00, for the purpose of paying off certain incumbrances upon the property mortgaged, and to make certain improvements thereon; and that Bones, as such trustee, had given his note, payable to McWilliams or order, for $4,000.00, the note bearing even date with the mortgage, and due twelve months after date, with interest at the rate of 8 per cent. per annum, payable semi-annually; and that in order to secure the payment of said note and interest, Bones, as such trustee, and by virtue of the authority vested in him by the will of his wife, mortgaged certain realty, being the property sold by the sheriff. The record shows that prior to this mortgage, Bones had given two other mortgages on the mill property, one to Joel Branham, and one to Mrs. Branham, each to secure two $500.00 notes, given for a balance of purchase money for one-half interest in the mill, due one and two years from January 12, 1884. These notes all became the property of Branham, who transferred them to his son-in-law, Penniston. The first two falling due were paid by Bones before he obtained the loans from McWilliams; and the last two, amounting to $1,000.00, were paid after that loan, and out of the McWilliams money. One Berry was also paid out of said money borrowed from McWilliams $668.50 to take up a mortgage given upon the same property by E. R. Smith before Bones, trustee, bought said property, and this mortgage con-

tained a waiver of homestead in said property. It was also shown by the evidence that no improvements were made on the property with the money borrowed from McWilliams.

On this state of facts, the court rendered judgment awarding $1,600.00 of the money in the hands of the sheriff to the ordinary, to the exclusion of the mortgage to McWilliams. McWilliams excepted to this decision: (1) Because said mortgage debt of McWilliams is superior to the homestead, said mortgage having been given for the purpose of raising money to pay off certain incumbrances upon the property, the proceeds of which property is the money before the court; and said mortgage also being given to make certain permanent improvements upon the property, the proceeds of which property were before the court for distribution. (2) Because said mortgage debt due to McWilliams is superior to the homestead, for the reason that said money was borrowed upon the faith and belief, and with the understanding and agreement, expressly stated and acted upon, that a great part thereof, to wit, $2,000, would be used in making permanent improvements upon the property mortgaged; that said Bones, trustee, is estopped by deed and good conscience from denying that the money was not so used. (3) Because the full $1,600.00 should not have been allowed from the $3,200.00 in the hands of the sheriff, for the reason that the debts paid by the money borrowed were superior to the homestead, the one being paid for the removal of an incumbrance upon the property which was given to secure a purchase money debt, to wit, the amount applied to relieve the Branham debt of $1,000, besides interest, and the E. R. Smith debt of $668.50, which was also superior to the homestead, the same being a debt waiving the homestead.

1. Counsel for plaintiff in error insisted that the

judgment of the court was erroneous because the money his client had furnished to Bones was used by Bones to improve the property before an exemption was taken upon it by Bones, and therefore his claim was superior in dignity to Bones' claim for exemption.  In order to maintain this proposition, it became necessary for him to get rid of the decisions rendered in the cases of *Stokes* v. *Hatcher*, 60 *Ga.* 617, and *Wilder & Son* v. *Frederick*, 67 *Ga.* 669.  He therefore asked permission of the court to review those two cases; the permission was granted him, and he endeavored to show that the decisions in those cases were erroneous.  He failed, however, to convince us.  After a careful consideration, we are of the opinion that the decisions are correct.  The constitution of the State does not make improvements put upon property before the exemption is granted one of the exceptions, but expressly declares the improvements put upon the homestead shall not be subject to levy and sale.  There is a material difference between the present constitution and the constitution of 1868 upon this subject.  Under the constitution of 1868 a homestead could be sold for money borrowed and expended in improvements upon the same.  In the constitution of 1877 that exception is left out, showing clearly to our minds that the framers of the present constitution did not intend to allow a homestead to be sold for money borrowed and expended in improvements upon the same.  If they would not allow it to be sold when the improvements were made upon the homestead itself, *a fortiori* it could not be sold for money borrowed and expended in improvements before the homestead was set apart.  This construction has been placed upon this section of the constitution so long, and has become so well-recognized by the bar and the people, as to become a rule of property; and it would be wrong for us to change it unless we were fully satisfied that the con-

struction was erroneous. We are not satisfied that it is erroneous, but are inclined to think it is correct. Besides, it amounts now to but little, as under the present constitution persons are allowed to waive homestead and exemption in all kinds of contracts; and if lenders of money and those who furnish materials fail to avail themselves of the waiver allowed by law, it is their own fault and they cannot complain.

2. We think, however, that the court erred in awarding the $1,600.00 to the applicant for the exemption in this case, under the facts as disclosed by this record. It will be remembered that the money borrowed by Bones from McWilliams went to pay off $1,000.00 to Branham, or his son-in-law, Penniston, which was for the purchase money of the property, and secured by mortgage, and that $668.50, besides interest, went to pay off Berry's claim, who had a mortgage upon the property with a waiver of homestead. The property did not bring a sufficient amount at the sheriff's sale to allow the full $1,600.00 to Bones as an exemption, and to pay off the Branham note and mortgage and the Berry mortgage. The scheme of our law is that before a person can claim an exemption in property, the purchase money therefor must be paid. This note of Branham's being for the purchase money, and the money borrowed by Bones from McWilliams having been used in paying off this purchase money, McWilliams stood in the place of Branham, or Penniston, his son-in-law, and was entitled to be paid the amount of the Branham debt before Bones could be allowed an exemption. Berry having a mortgage in which there was a waiver of homestead, and McWilliams' money having been expended in paying off and discharging this mortgage, McWilliams stood in Berry's place, and the amount of the principal and interest of the Berry mortgage should have been awarded to McWilliams instead of Bones. But it is

argued by counsel for the defendant that these claims, having been transferred by the original owners, Branham and Smith, without endorsement or guaranty, lose their character and nature as purchase money notes, and that the holder thereof is nothing more than an ordinary creditor; and he cites the cases of *Hunt* v. *Harbor*, 80 *Ga.* 746, and *Carhart* v. *Reviere*, 78 *Ga.* 173 (and cases there cited), to sustain him in this position. That is the general rule in regard to purchase money notes when they have been transferred without endorsement or guaranty. This record does not show whether the notes and mortgage were so transferred or not; but admitting that they were, we do not think that the principle applies in a case like this. This is not a contest between the vendor of property and other creditors of a debtor; it is a contest between a creditor and the debtor himself. And as we have said before, the scheme of the law being that the purchase money must be paid before an exemption can be granted, we do not think a debtor can take advantage of this principle and claim an exemption on property for which he has not paid the purchase money, although the claim has been transferred by the original vendor without endorsement. Besides, these were not notes simply for the purchase money, but notes secured by a mortgage, which created a lien upon the property for the purchase money; and McWilliams' money having been used to discharge this lien for the purchase money, and having been used to discharge the mortgage, in which there was a waiver of homestead, we think the rule insisted on by counsel for the defendant in error does not apply. The payment of these two claims enabled Bones to claim an exemption on this property. If they had not been paid off and discharged, he could not have claimed an exemption until they were paid. McWilliams' money having paid them, we think it is nothing but right, and just,

v 84-14

and honest that he should be paid these claims before Bones could claim an exemption on this money in the hands of the sheriff.

3. It was also insisted by counsel for the defendant in error that because the money advanced by McWilliams to remove from the property the incumbrances thereon of the other mortgagees, was obtained by a contract infected with usury, the right of McWilliams to stand in the place of the other mortgagees as to the money required to remove these incumbrances would not exist. In other words, that although it might be that the holders of the two mortgages, one of them for the purchase money and one waiving homestead, might stand superior to the homestead claim, yet as usury in a mortgage defeats a waiver of homestead in the same mortgage, and there being usury in the mortgage to McWilliams, he can take no benefit from the high character of the incumbrances to remove which his money was used. We do not agree with this contention, for McWilliams is not relying upon any waiver in his own mortgage, but upon his equitable rights resulting from the application of his money to discharge mortgages which were not infected, and the discharge of which was requisite in order for Bones to have a homestead at all which would be free from incumbrances. The same principle is involved which was recognized in *Bugg* v. *Russell*, 75 *Ga.* 837, and we think that case controls the question in the present case.

For these reasons, and perhaps for others which might be mentioned, the court should have awarded judgment in favor of McWilliams for the whole amount of the Branham debt, principal and interest, and also principal and interest of the Berry debt, in preference to the exemption claimed by Bones.

*Judgment reversed.*