### In re WILLIAMSON.

(District Court, N. D. Georgia, N. D. August 21, 1901.)

#### No. 19.

BANKRUPTCY—EXEMPTION—FRAUD.

    A bankrupt, whose business is carried on in the name of her son, as agent, without her having anything to do with it, cannot claim an exemption therefrom allowed by Code Ga., which requires the person claiming it to come into court with clean hands, practically all the indebtedness having been contracted within the five months preceding the petition in bankruptcy, and all the best of the stock having been sold off at auction during the last of said months, leaving old stock, which, with fixtures, is worth less than the amount of the exemption.

In Bankruptcy.

Joel Branham and Max Meyerhardt, for bankrupt.

Denny & Harris, for creditors.

NEWMAN, District Judge. Since argument of the matter of exemption for the bankrupt in this case, I have gone over the evidence carefully, and considered the same. The exemption is claimed by the bankrupt, Mrs. Williamson, "under sections 5912 and 2827 of the Civil Code of Georgia, she being an aged and infirm person, 62 years of age." The conclusion I have reached is that the exemption set apart by the trustee and approved by the referee cannot be allowed. The exemption allowed by the statutes of the state is asked out of a stock of jewelry, which, it is claimed, belonged to the bankrupt, but the jewelry business was conducted by Mrs. Williamson's son, J. K. Williamson, as it appears, under the name of "J. K. Williamson, Agent." It is shown by the testimony reported by the referee that Mrs. Williamson had nothing whatever to do with the business, but that the same was conducted entirely by J. K. Williamson. In the testimony of J. K. Williamson this appears:

    "She [Mrs. Williamson] has not opened her mouth about the business since she bought it out four years ago the 12th of April. She bought it when it was sold as the property of witness. Witness was then transferring the title because he was financially involved. The sale of the Allen & McOsker property was brought about for the same reason. Witness was with Allen & McOsker for years before their business closed out. This will be the third time the business has been closed out,—changed from hand to hand."

The testimony of Mrs. Williamson taken by the referee is to the same effect,—that her son, J. K. Williamson, had entire charge and control of the jewelry business. It further appears from the testimony that this bankruptcy proceeding was arranged for Mrs. Williamson by her son, J. K. Williamson, and that all that she did was to sign her name where she was told to sign. She says this in her own testimony on the subject:

    "Never did talk to Judge Branham or Judge Meyerhardt [the counsel in the case] about this bankruptcy proceeding. The signatures to the affidavits in petition of bankruptcy look like bankrupt's handwriting; they are her signatures. Don't know when she signed them. Signed some papers when Mr. Printup came out there. Bankrupt never talked with any one about it. Klip [her son] attends to all her business. Bankrupt knew what these papers were, but she never read them. She never read them, and they were never read over to her. She did not know the contents of any of these papers.

She just let Klip attend to it. He attends to all her business. Don't know whether it was a month or a year before she signed them that J. K. Williamson first stated to her that he wanted her to sign these papers; but it was before she signed them. She just signed what he said, as he always attended to everything, and bankrupt was satisfied. She did not talk to J. K. Williamson before signing these papers. He was not present when Mr. Printup was there. Don't know when J. K. Williamson asked her to sign these papers. Don't know whether it was that day. Don't know whether it was after or before."

And again:

"She signed the affidavit to the petition for adjudication in bankruptcy; she never examined it; and without having it read over to her, and without knowing what the contents were. Klip attended to the sale of the goods at the public outcry. He did as he thought best. Bankrupt didn't know anything about the sale. J. K. Williamson did not tell her that it was necessary to hold that sale in order to pay off Mr. Allen and Mr. McOsker. He didn't talk to her about it; she didn't know anything about the sale."

It further appears from the evidence that in February last J. K. Williamson conducted an auction sale, at which $1,259 of jewelry was sold. J. K. Williamson says, in his evidence, that he went to Cincinnati, and bought $200 worth of jewelry for this sale. The names of the persons from whom he bought appear in his list of creditors for considerably more than the amount he says he purchased in January; but it is not shown whether the amounts purchased in January were paid for in cash, or are a part of the indebtedness set out in the schedule. J. K. Williamson says that he intended by the auction to dispose of old stock; but concedes that he failed in this, and all he was able to sell was the new stock. It appears, therefore, clearly from the evidence that J. K. Williamson, at this auction sale, sold off the best part of his stock in the month of February, leaving principally old stock on hand. This old stock, which, together with the fixtures, is valued at $1,571.72, is now sought to be exempted as against creditors from whom the new stock so disposed of must have been purchased. It appears from the schedule of the unsecured creditors that the bulk of the indebtedness was incurred in October, November, and December, 1900, and January and February, 1901. There are only two or three items of indebtedness which appear to have been made prior to October, 1900. The auction sale, as stated, occurred in February, 1901, and the petition in bankruptcy was filed on the 12th day of March, 1901.

In Georgia the exemption from levy and sale provided by statute will not be allowed unless the person claiming the same comes into court with clean hands, and certainly, in order to justify the allowance of an exemption out of a stock of goods as against the creditors who sold the goods with which the business has been conducted, a case should be shown of fair dealing on the part of the debtor. Of the goods which were purchased in October, November, and December, a considerable amount must have been sold during the busy season, especially just preceding the Christmas holidays, when, as is generally understood, this class of business is better than at any other season of the year. Then the auction sale was held in February, at which over $1,200 worth of what J. K. Williamson concedes to have been new stock was sold, leaving, as has been stated, jewelry worth a little less in amount than the exemption allowed by the statutes of

Georgia. A case is not presented where, in my opinion, the exemption should be approved. It may be remarked that it appears that J. K. Williamson is unmarried, and that the exemption is claimed by Mrs. Williamson "under sections 5912 and 2827 of the Civil Code of Georgia, she being an aged and infirm person, 62 years of age." In the case of In re Waxelbaum (D. C.) 101 Fed. 228, this question was discussed by this court, and a similar conclusion reached as to the exemption then claimed. The decisions of the supreme court of the state on the subject are there referred to.

I think that as to the exemption of household and kitchen furniture and wearing apparel the action of the trustee in setting the same apart should be approved, but as to his action in setting apart the stock of jewelry and fixtures it should not be approved, and to that extent I differ with the referee. An order may be taken accordingly.