In re STEPHENS et al.

(District Court, N. D. Georgia. January 15, 1902.)

No. 677.

BANKRUPTCY—EXEMPTION—FRAUD.

> Under Code Ga. § 2830, providing that a debtor guilty of willful fraud in concealing property from creditors shall lose the benefit of his exemption, a bankrupt claiming an exemption under the laws of that state must give a better explanation than that he "sold a great deal of goods, and sold some of them at less than cost, to try to meet obligations," where his schedule in bankruptcy shows $7,500 assets and $9,800 liabilities, while his statement, made eight months before, and which he says was correct, showed $13,500 assets and $7,000 indebtedness.

In Bankruptcy.

W. C. Wright, for bankrupt.

R. W. Freeman and R. O. Jones, for objectors.

NEWMAN, District Judge. The bankrupt firm is composed of F. M. Stephens and A. J. Stephens. The entire property shown on the schedules, except a small amount of open accounts, is a stock of merchandise. Neither of the bankrupts has a wife or children. They have a mother, who is 63 years of age, and an orphan niece, 9 years of age. The two brothers, mother, and niece live together, and constitute one family. Under the constitution and laws of Georgia, it seems that the elder brother, who is the head of a family, the females of which are dependent, would be a person entitled to an exemption. Certainly, however, both brothers cannot claim an exemption with the same beneficiaries, the mother and niece. Conceding it to be true that F. M. Stephens is so situated that he is entitled under the laws of the state to claim an exemption, is he entitled to it out of the firm assets under the facts and circumstances of the case as shown in the record? There is a claim for exemption on the part of both of the bankrupts accompanying the petition in bankruptcy. Each of the bankrupts has selected certain articles of merchandise, an itemized list of which accompanies the schedule. In the case of F. M. Stephens the total amount of merchandise so claimed as an exemp-

tion is $1,599.94, and in the case of A. J. Stephens $1,599.84. The trustee set apart the exemptions as claimed. Objection was made to the allowance of the same before the referee, and after hearing the matter he denied the exemption as to both of the partners. This ruling of the referee is certified by him, at the request of the bankrupts, to the district court. Numerous objections were urged by the creditors before the referee against the allowance of these exemptions, —among others that the purchase price of a part of the goods claimed as an exemption was still due to the creditors who interposed objections; as to A. J. Stephens, because he contributed nothing to the partnership business; as to F. M. Stephens, because he contributed less than $1,600; and by some of the creditors, upon the ground that they held notes containing waiver of homestead and exemption. Another objection, and a most important one, was, substantially and in effect, that the bankrupts were not in position to claim an exemption, because they had failed to make a full and free disclosure of their property, and that they did not come into court with clean hands, so as to be entitled to an exemption under the laws of this state. The law of Georgia on this subject is contained in Code, § 2830, as follows:

"The debtor guilty of wilful fraud in the concealment of part of his property from his creditors, of which he is possessed when he seeks the benefit of the exemption, shall, on account of his fraud, lose the benefit of such exemption, and his property shall be subject to the payment of all just debts which he owed at the time such fraud was committed."

The record shows that the bankrupts made a statement in January, 1901, as to the condition of their business, which showed assets amounting to $13,475.20, and a total indebtedness of $6,938.38, leaving a balance of assets over liabilities of $6,536.82. When examined before the referee in the matter of exemption, they testified that this statement was correct when made. Their schedule in bankruptcy filed September 2, 1901, showed assets of $7,474.58 and liabilities of $9,-799.96, an excess of liabilities over assets of $2,325.38. This shows a diminution of the estate in eight months of $8,862.20. A discrepancy of this kind, in a business no larger than that the bankrupts were conducting, needs explanation of some kind. The only explanation given, so far as appears in the record, was that they "sold a great deal of goods, and sold some of them at less than cost, to try to meet obligations." A more satisfactory explanation than this should be made by the bankrupts when an exemption is claimed. A case very much like this has been decided by this court in Re Waxelbaum (D. C.) 101 Fed. 228, and the conclusion reached that the exemption would not be allowed under such circumstances. The referee had the bankrupts and other witnesses before him in this case, and had opportunity for ascertaining the truth of the matter, and he evidently found that there was not such good faith and such conduct on the part of the bankrupts as would justify the allowance of an exemption to either of them. It is stated in Re Waxelbaum, supra, by this court, that:

"The rule is well recognized that the district court will not interfere with the action of the referee in bankruptcy as to his findings on facts, unless the same are manifestly erroneous."

114 F.—13

There is no error of law in this case, and the conclusion of the referee is abundantly supported by the facts. The referee's decision denying the exemptions will be sustained as to both the bankrupts.