WRIGHT *v.* CAROLINA PORTLAND CEMENT COMPANY
*et al.*

No. 9334. AUGUST 8, 1933. REHEARING DENIED SEPTEMBER 14, 1933.

*Roy S. Drennan* and *Judson Andrews,* for plaintiff in error.

*Grant & Long, H. H. Turner, Burress & Dillard,* and *R. B. Poole,* contra.

RUSSELL, C. J. On or about October 20, 1931, C. Y. Wright, while owning a vacant lot subject to an outstanding security deed in favor of J. E. Mayes for part of the purchase-money of the lot, contracted with W. S. King and J. P. Hinson to erect a dwelling house thereon at a price of $2025, the contractors to furnish all material and labor. In the construction of the house the contractors purchased material from the Carolina Portland Cement Company, which company on December 12, 1931, duly recorded its claim of lien against King and Hinson and against the property improved, for $1079.47. King and Hinson, on December 21, 1931, caused to be recorded their claim of lien for balance due of $1658 on the contract with Wright. On November 28, 1931, Wright executed to Dr. W. T. Rogers a note for $1000, due on demand.

containing a waiver of homestead rights, and assigning to the holder of the note "a sufficient amount of my . . homestead and exemption to pay this note in full." On the same day he executed as security therefor a deed conveying the lot upon which the residence was being erected, this deed reciting that it was made subject to the outstanding security deed for purchase-money. It was recorded on December 2, 1931. On January 7, 1932, Dr. Rogers filed a bill in equity against C. Y. Wright, for the purpose of having a receiver appointed to take charge of and sell the property and apply the proceeds to the satisfaction of his security deed, which he claimed to be superior to the liens of the contractors and materialmen, though he conceded the security deed in favor of Mayes to be the first lien on the property. Wright answered, admitting the allegations of the petition, and consenting to the appointment of a receiver; and a receiver was appointed by the court. King and Hinson and the Carolina Portland Cement Company, in response to rules nisi issued on the petition of Rogers, asserted their liens against the property improved, and contested the claim of Rogers, alleging that his security deed was executed as a part of a conspiracy between Rogers and Wright and his wife, Mrs. Elma Wright, for the purpose of defrauding the contractors and materialmen. The case was referred to an auditor, and resulted in a decree fixing the priorities of the claims as follows: (1) The amount due on the purchase-money security deed, $694.65. (2) The lien of the Carolina Portland Cement Company, $1190.97. (3) The lien of King and Hinson, $1658. (4) The lien of the loan deed held by W. T. Rogers, $1,000. Rogers filed exceptions to the findings of the auditor on which the court based its decree, which the court overruled. No exception was taken to that ruling. While the case was pending, it became necessary for the receiver appointed by the court to borrow money sufficient to pay off the purchase-money due Mayes. This was done by order of the court, the receiver borrowing the money from one Lynch and executing to him his note and a security deed to the property. This note and deed were subsequently acquired by the Carolina Portland Cement Company. On August 19, 1932, the receiver, by order of the court, offered the property for sale at public outcry, and the Cement Company was the highest bidder, at $1600. On this date Mrs. Elma Wright had recorded in the office of the ordinary of Fulton Coun-

ty her claim to $500 of the proceeds of this sale, as provided in the Civil Code of 1910, § 3420, and on the same day filed an intervention in the case of Rogers *v.* Wright et al., reciting the taking out of the homestead, and praying that the court order the receiver to pay to her the amount of the homestead in cash out of the funds in his hands. The Carolina Portland Cement Company filed objections to the intervention. The court refused to grant the prayer of intervenor, and ordered that the receiver, after payment of costs and certain taxes due on the property, pay first the amount due on the note executed by the receiver to C. V. Lynch; and second, the balance of the fund to the Carolina Portland Cement Company on its judgment as a materialman. To this judgment Mrs. Wright excepted.

The objections filed by the Carolina Portland Cement Company to the allowance of the homestead were: (a) That the alleged order of the court of ordinary, purporting to set aside the sum of $500 as a short homestead under section 3416 of the Code, is illegal and void, for the reason that there is no provision of law allowing the exemption of cash under said statute. (b) That the plaintiff in error would be entitled to no part of the funds, for the reason that the whole thereof was liable to liens for purchase-money (the labor and material used in the construction of the house), and therefore superior to the homestead claimed. (c) That at the time Wright contracted for the erection of the house he held title to the property subject to a deed to secure debt executed by him to secure a series of notes given as a part of the purchase-money, each of which notes contained a waiver of all homestead rights. After the commencement of this proceeding, the receiver, acting under orders of the court, borrowed from one Lynch $694.65, which amount was actually used in paying off said purchase-money notes. The receiver executed his note for the amount so borrowed, and to secure the same executed to said Lynch a deed to the property, which note and deed were subsequently acquired by the Carolina Portland Cement Company. In her intervention the plaintiff in error admitted that the amount due on the note so acquired was superior to the homestead claimed by her, and she asserted her homestead claim only against the remainder of the funds in the hands of the receiver, $905.35. The Carolina Portland Cement Company contended that "in equity and good conscience between

all of the parties to the case it ought to assert its rights first against any part of the funds in the hands of the receiver which may be held to be exempt as a homestead as claimed by intervenor." (d) That "the virtual effect of the awarding of any part of said fund to the intervenor would be to award it to W. T. Rogers, whose rights are, as heretofore determined by this court, subordinate to the rights of the Carolina Portland Cement Company, and of King and Hinson. It is contended that the lien in favor of W. T. Rogers is superior to the homestead claimed by plaintiff in error, for the reason both the notes and loan deed executed to Rogers by Wright waive all exemption rights Wright and his family may have; that were the sum of $500 awarded to plaintiff in error as a homestead, the same would instantly be subjected to the claim of Rogers under his homestead-waiver notes, and in this way the decree of the court would be set at nought, and Rogers would then secure an unfair and unconscionable advantage over the contractors and the materialmen whose rights had been determined to be superior to his.

The amount left in the hands of the receiver after payment of the balance of the purchase-price of the lot amounted to only $905.35, which was less than the claim of the materialman, the Carolina Portland Cement Company, which furnished this material to the actual contractors, King and Hinson. The court refused to grant the statutory pony homestead, and thereupon Mrs. Wright sued out the present writ of error, but no other party in the cause has taken exceptions to the findings which may presumably be adverse to them. The applicant for the pony homestead concedes that the unpaid purchase-price of the land upon which the house was constructed was properly given the first lien upon the funds. Since none of the other parties are excepting, it is readily to be seen that the single issue presented by this extremely voluminous record is whether a materialman's lien for lumber, etc., is in the nature of purchase-money, so as to defeat the right given the applicant by the Code, § 3420, under the undisputed facts of this case.

After diligent search, we have been unable to find a decision of this court to the effect that a lien can be impressed upon homestead property for services or improvements made before any homestead was ever granted. As pointed out by Justice Jackson in *Dickens* v. *Thrasher*, 58 *Ga.* 360, the purpose of binding a home-

stead after it is granted, for improvements or labor done in maintaining the property, is that otherwise an old and indigent couple, after being granted the homestead, would not be able to get any one to perform services for them. As said by Judge Bleckley in *Frost* v. *Borders,* 59 *Ga.* 818, 820, "The end is the important matter, and being precisely the same whether claim or illegality be employed as means, the means used need not undergo nice criticism. Law belongs to the useful arts, rather than to the fine arts. With its hold upon the substance, it is not anxious about the perfection of form." The controlling question under the undisputed facts of this case, upon the very point as to a lien claimed for material, was decided by a unanimous bench in *Wilder* v. *Frederick,* 67 *Ga.* 669, in which it was held: "The homestead is not subject to a debt created for material used in building the house thereon before it was set apart as exempt." Several questions were involved in that case not involved here, but the exact question now before us was ruled on, Mr. Justice Crawford delivering the opinion of the court: "The first question made by the record is, whether a debt created by the owner of land, *before* the same is set apart as a homestead, for material used in building, or completing his dwelling, can subject the same to sale for its payment. It has been held by this court, that the homestead was not subject to the payment of a debt for *labor done thereon* before it was set apart as such. And 'that the word "thereon" in connection with "labor," refers not to the soil or property out of which the homestead is afterwards carved, but to the land after it is made *homestead.*' 60 *Ga.* 617. It was also held in 58 *Ga.* 360, that the homestead was subject to a debt for labor done thereon in cultivation of crops or other farm work, as in building or other improvements of a substantial nature, *after* it had been set apart. In 61 *Ga.* 501, it was ruled that land exempted under section 2040 of the Code, though made liable for the purchase-money by the act of 1874, still was not liable for money expended in improvements before any right of exemption was asserted. Thus we think that the principle is ruled in the foregoing decisions, and that by the very words of the constitution itself this view is strengthened wherein it says, 'including such improvements as *may* be made *thereon* from time to time . . or material furnished therefor.'"

One of the arguments advanced by the Carolina Portland Cement

Company is that if the court should allow the homestead, it would inure entirely to the benefit of Rogers, it being claimed that there is a conspiracy between the plaintiff in error and Rogers by which he may receive the $500. It is immaterial whether there is a conspiracy or not. The law will defeat and absolutely prevent what counsel for defendant in error suspects. The order of Judge Jeffries, of the court of ordinary, setting apart this $500 as a homestead, specifically provides that the money shall be paid over to be invested only upon the order of the judge of the superior court, as is provided in all cases of investment of homestead property. We will not contemplate that any judge of the superior court in Georgia, in awarding the fund as homestead property, will not comply with the law upon this subject. When the $500 has been invested in such property as the judge of the superior court of Fulton County shall direct, it can not be diverted except upon a similar order for reinvestment.

We do not overlook the rule which requires one who has two means of access to a specific fund to elect which to pursue if either is sufficient to pay his demand, and is confined to the one fund if a rival claimant has a claim or demand upon only one fund, but we fail to comprehend any theory upon which, because a certain creditor has a claim upon two funds, he may exhaust both regardless of superior priorities in favor of another. It is very plain to us, in the state of the record, that the only real contest is as to the allowance of the sum of $500 from the purchase-price as a pony homestead under the provisions of sections 3416 et seq., and in the mode prescribed by § 3420. We are clear that the plaintiff in error is entitled to have her homestead set apart as prayed, and the question of what becomes of the remainder of the $900 after the payment of the costs of this proceeding and the homestead allowance is not presented to us by the writ of error.

*Judgment reversed. All the Justices concur, except Hill, J., absent because of illness.*

*On denial motion for rehearing, all the Justices concur.*