## ROSE *v.* CRANE HEATING COMPANY *et al.*

No. 14891.   OCTOBER 4, 1944.

298

*D. S. Strickland* and *Roy S. Drennan,* for plaintiff in error.

*Joe J. Fine, Claud F. Brackett, Hirsch, Smith, Kilpatrick, Clay & Cody, E. Harold Sheats, Cobb & Cobb, Robert H. Jones Jr.,* and *Burress & Dillard,* contra.

BELL, Chief Justice. The Code, § 51-101, declares: "There shall be exempt from levy and sale by virtue of any process whatever under the laws of this State, except as hereinafter excepted, of the property of every head of a family,  .  .  realty or personalty, or both, to the value in the aggregate of $1600; and no court or ministerial officer in this State shall ever have jurisdiction or authority to enforce any judgment, execution, or decree against the property set apart for such purpose, including such

improvements as may be made thereon from time to time, except for taxes, for the purchase-money of the same, for labor done thereon, for material furnished therefor, or for the removal of incumbrances thereon." See also the Code, §§ 2-7201, 2-7301.

As shown in the statement of facts, the materials involved in this case were furnished before the homestead was set apart. It has been held in several cases that the phrase "material furnished therefor," describing one class of debts for which a homestead may be liable, refers to material furnished *for the homestead,* that is, after the homestead has been set apart, and does not include material furnished to improve the property *before* it was set apart. *Wilder* v. *Frederick,* 67 *Ga.* 669; *McWilliams* v. *Bones,* 84 *Ga.* 203 (10 S. E. 724); *Wright* v. *Carolina Portland Cement Co.,* 177 *Ga.* 564 (170 S. E. 795); *Builders Lumber Co.* v. *Hunt,* 179 *Ga.* 367 (176 S. E. 11). The rule as thus stated was recognized by the trial judge, but he held that it did not apply, being of the opinion that, under the facts, Rose, the plaintiff in error, was a mere naked trustee for his vendees as to any right or interest that he might have had in these funds, and therefore did not have such a title as would support a claim of homestead. Apparently, this was the position taken by the materialmen in the trial court, and they take the same position here. A further contention of the defendants in error, the materialmen, is that it would be inequitable to sustain the claim of the plaintiff in error with respect to the fund in controversy, when, as they insist, he did not contribute one dollar toward its creation.

It is insisted by the plaintiff in error that, even though his vendees may have held superior claims against the fund, and even if their interests were such that he should be treated as a trustee for them, still, he was, to the amount of his homestead, entitled to priority as against the materialmen, and they could not, for the purpose of defeating his right as against them, take advantage of the rights of such purchasers, who did not appear at the hearing or otherwise seek to participate in the distribution. These are the substantial contentions of the parties, although, of course, they are stated more fully in the briefs.

In *Kirby* v. *Reese,* 69 *Ga.* 452, it was held: "A deed made to secure a debt conveys the title to land, and a homestead therein will avail nothing as against such title. There is nothing in the debtor

upon which a homestead can operate save the equity of redemption; if he never redeems, there is nothing to which it can attach." In that case, however, the property had been sold to satisfy the secured debt, and the contest was between the purchaser at that sale and the holder of a mortgage, which antedated the security deed. The homesteader had not redeemed, but had allowed the land to sell, and therefore, as to this point, the gist of the decision was simply that the prior lien of the mortgage was not affected by the homestead, which had become extinct on the sale of the property to satisfy the debt secured by the security deed, and therefore did not inure to the benefit of the purchaser. Compare *J. R. Watkins Co.* v. *Farmers Fertilizer Co.,* 195 *Ga.* 455 (24 S. E. 2d, 660). Certainly, as against a valid security deed, a homestead could not become effective until the debt is paid. Compare *Gill* v. *Mizell,* 43 *Ga.* 590. But this does not mean that one may not have a homestead in property that has been so conveyed, so as to claim the proceeds of a sale, representing the equity of redemption. In *Raley* v. *Ross,* 59 *Ga.* 862 (2), 876, it was said: "Though the holder of a bond for titles is without legal title, he is not without some sort of interest in the land, and upon that interest the homestead right may be made to attach. . . Of course, it cannot attach so as not to be subordinate to the legal title in the vendor, and to whatever else would, in an ordinary case, prevail over the homestead right. . . But when the land, as a whole, has paid its own purchase-money, or so much thereof as the deceased [purchaser] left unprovided for by some special arrangement, there appears to be no good reason why the homestead, or whatever part of it may be spared, should not be recognized and protected." So, in the instant case, the homestead was not ineffectual merely because of the outstanding security deeds. The properties were sold subject to such deeds, and the controversy relates only to the proceeds, representing the equity of redemption.

Nevertheless, we think that the claim based on the homestead was properly denied, under the facts of the record. We have mentioned the contention of the plaintiff in error that the materialmen could not take advantage of rights that might have been asserted by his vendees. However, with respect to himself, he says in effect that, since his vendees did not appear and assert their claims, he should have been given priority over the material-

men, whatever the rights of such vendees might have been. Is he not thus taking the identical position which he contends the materialmen should not be permitted to take, that is, standing upon the rights of others rather than his own, and if so, is the position more tenable for him than it would be for the materialmen? See, in this connection, *Pendleton* v. *Hooper,* 87 *Ga.* 108 (13 S. E. 313, 27 Am. St. R. 227); *McDowell* v. *McMurria,* 107 *Ga.* 812 (2) (33 S. E. 709, 73 Am. St. R. 155); *Bank of Wrightsville* v. *Powell,* 163 *Ga.* 291 (3) (135 S. E. 922); *McCranie* v. *Cobb,* 174 *Ga.* 370 (162 S. E. 692). Whatever might be the proper answers to these questions under other circumstances, we think that, under the facts of this case, they should be answered against him, for the reason that the burden was upon him to show that he was entitled to some *definite portion* of this fund, and he did not carry this burden. If he did have such burden, which question will be more fully discussed presently, then, even as against the materialmen, he must stand upon the strength of his own claim, and not upon the weakness of theirs. Code, §§ 33-101, 37-103.

The purchasers had paid substantial amounts upon their contracts, in view of which they acquired equitable interests in the real estate, and hence in the proceeds of the sales. *Phinizy* v. *Guernsey,* 111 *Ga.* 346 (36 S. E. 796, 50 L. R. A. 680, 78 Am. St. R. 207); *Stonecypher* v. *Coleman,* 161 *Ga.* 403 (131 S. E. 75); *Gholston* v. *Northeastern Banking Co.,* 158 *Ga.* 291, 293 (123 S. E. 111, 35 A. L. R. 23); *Dunson* v. *Lewis,* 156 *Ga.* 692, 700 (119 S. E. 846). Clearly, as to these equitable interests, the plaintiff in error was a trustee for such vendees, and could not prevail as against them, upon his homestead. Accordingly, if they had asserted their claims, the fund to the extent of their claims would have gone to them as against him, even though it might then as to them, the vendees, have been subject to the liens of the materialmen. Moreover, under the facts shown, it would clearly have been thus subject. Code, § 67-2002; *Oglethorpe Savings & Trust Co.* v. *Morgan,* 149 *Ga.* 787 (2) (102 S. E. 528); *Williams* v. *Brewton,* 170 *Ga.* 164 (152 S. E. 441).

It was because of the defaults committed by the plaintiff in error as to all three classes of contracts—(1) the security deeds, (2) the contracts of sale, and (3) the contracts for material—that the properties had to be sold, with the result that the interests

of his vendees and the claims of the materialmen became entangled. Before the homestead was set apart, the fund was in court and he had no claim thereto. He then obtained the homestead, and asked to participate. In the circumstances, the burden was upon him to show, not only that he had obtained a homestead, but also the definite amount to which he was entitled. Code, §§ 37-113, 37-303; *Dawson Consolidated Grocery Co.* v. *Hudson,* 137 *Ga.* 846 (2) (74 S. E. 796); *Kimsey* v. *Rogers,* 166 *Ga.* 176 (8) (142 S. E. 667); *Clegg-Ray Co.* v. *Indiana Scale & Truck Co.,* 125 *Ga.* 558 (54 S. E. 538); 19 Am. Jur. 335, § 483. It was not shown how much of the purchase-money any of his vendees had paid, nor was there any data from which any definite amount could be calculated. Since their equitable interests were superior to the claim of the plaintiff in error, but inferior to the claims of the defendants in error, the respective rights even of the actually contesting parties could not be determined with any degree of definiteness without evidence as to the amounts of the vendees' interests measured in terms of money; and this is true, whether the part that should have gone to the vendees if they had asserted their claims might then have passed to the materialmen entirely as against the plaintiff in error, under the principle that equity considers that done which ought to be done; or whether, under this or some other equitable principle, he might have been entitled to some part thereof. Code, §§ 37-103, 37-106, 37-107, 37-401. The vendees did not assign their claims, and may have failed to appear simply because they regarded the liens of the materialmen as being superior, and the plaintiff in error can no more claim the benefit of their absence than the materialmen themselves could do. Since he did not furnish the court with sufficient data upon which to base a decree for any definite amount in his favor as against the materialmen, as he had the burden of doing, the court did not err in rendering judgment in favor of the materialmen.

As will have been seen, we have for the most part followed the reasoning of the trial judge; but, subject to one qualification to be stated later, we do not think it could be said absolutely that the plaintiff in error did not have such title as would support a homestead. This would depend, as to each lot, on whether the refund due to the vendee was sufficient to cover the equity represented by the sale, or would have left a balance to which the homestead could

attach. *Kirby* v. *Reese,* supra; *J. R. Watkins Co.* v. *Farmers Fertilizer Co.,* supra; 26 Am. Jur. 37, § 57. However, as above shown, the judgment was correct and must be affirmed, for the reason that the plaintiff in error did not show with sufficient certainty what amount was due to any vendee.

The qualification above mentioned is this: It appears from the record that the amount of the liens for material exceeded, as to each lot, the price for which the equity was sold. Would or would not this show, prima facie, that such equity was *created* entirely by the materialmen? The plaintiff in error does not show that any part of the purchase-money received by him was applied toward its creation, or that he otherwise contributed anything of value thereto. If the materialmen did by their material really *create* this entire equity, it may or may not be that the rule stated at the outset as to exemption from liability for improvements would be applicable; but this question need not be determined under the facts before us, and we mention it only to avoid an implied or supposed committal upon it, for, even assuming that it should be applied, the judgment was not erroneous as contended. As having perhaps some bearing upon the question, see In re Williamson, 114 Fed. 190; In re Rutland Grocery Co., 189 Fed. 765.

*Judgment affirmed. All the Justices concur.*